432 So.2d 1067 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael Wayne PICKERING, Defendant-Appellant.
No. CR82-648.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
*1069 Edwin O. Ware, Dist. Atty., Alexandria, for plaintiff-appellee.
John C. Pickels, Alexandria, for defendant-appellant.
Before DOMENGEAUX, FORET and CUTRER, JJ.
DOMENGEAUX, Judge.
Defendant, Michael Wayne Pickering, was charged by Bills of Information on June 7, 1982, with interfering with a state police officer, unauthorized use of a movable, operating a vehicle without a driver's license, and allowing a minor to drive, violations of La.R.S. 40:1390, 14:68, 32:52, and 32:416, respectively. It was stipulated at trial that the charges under all Bills of Information would be consolidated. Pursuant thereto, the defendant was found guilty of two of the charges, interfering with a police officer and driving without a license, and was sentenced to thirty days in the parish prison for the former and fined $40.00 plus court costs for the latter. Defendant requests that this Court review the trial court's adjudication of guilt on both counts. He is entitled to appellate review because the consolidated charges filed by the State exposed him to a total potential penalty in excess of six months incarceration and $500.00 in fines.
This case, pertaining to the charge of interference with the duties of a state police officer, was consolidated at trial and on appeal with State of Louisiana v. Michael Wayne Pickering, 432 So.2d 1070 (La.App. 3rd Cir.1983) (Docket No. CR82-649), which dealt with operating a vehicle without a driver's license. The issues in both cases will be discussed herein, although separate opinions in each case are being rendered on this date.
The setting of this incident is a rural state highway near Otis, Louisiana, on the night of June 2, 1982. Shortly after dusk, a state trooper out on routine patrol, pulled his car up behind a lone blue Pontiac that had stopped at an intersection. The officer's curiosity was immediately aroused by the sight of the Pontiac's driver exchanging places with the passenger. With the "switch" accomplished, the blue sedan continued on its journeyunder the close scrutiny of the state trooper. Noticing that the Pontiac bore no license plate, the officer signaled the car with his red flashing lights to pull off the road. The car continued onward for approximately 100 yards before turning into a private residential driveway and coming to a halt. Defendant exited the car from the driver's sidefollowed by a young girl of approximately 11 years of age, who also left the car through the driver's door. The officer requested that the defendant produce his driver's license and defendant confessed that he did not have one. A question developed as to the ownership of the car and as the trooper proceeded into his investigation, the defendant began easing his way toward the adjacent house. His slow retreat caught the trooper's eye who immediately requested that he not go into the house because he was needed for further questioning. The trooper testified that he was interested in determining why the defendant did not have a license, and whether he was in lawful possession of the car. Defendant continued his backward movement and the officer once again requested that he stay put. Defendant replied that he wanted to make a phone call and kept walking toward the house. The officer warned him once again and defendant *1070 broke and ran. The officer chased defendant around the house but lost him when defendant vanished into a wooded lot located behind the house. A warrant was secured the next day for the defendant's arrest, which took place the following morning at his residence.
On appeal, the defendant avers that La. R.S. 40:1390 (interfering with a police officer) and La.R.S. 32:52 (operating a vehicle without a license) are unconstitutionally vague as applied to him in this case. However, he has presented this court with no evidence or argumentation in support of the unconstitutionality of La.R.S. 32:52. Rather, he has limited his constitutional challenge to an attack of La.R.S. 40:1390 on the basis of the vagueness of the word "interfere" as used in that statute.
Certain rules of construction must be used by a court in testing the constitutionality of a penal statute. A statute's constitutionality is presumed, and the burden of clearly establishing its unconstitutionality rests upon the party attacking it. State v. Gisclair, 363 So.2d 696 (La.1978). Furthermore, a statute should be given a genuine construction, according to the fair import of its words, taken in their usual sense, in connection with the context. La. R.S. 14:3; Gisclair, supra.
In State v. Farris, 412 So.2d 1039 (La.1982), the court described the circumstances under which the language in a statute can be deemed to be constitutionally definite rather than vague:
"This Court has held that the constitutional guarantee that an accused be informed of the nature and cause of the accusation against him requires that a penal statute describe unlawful conduct with sufficient clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto..... We have also held that the requirement that a statute be definite has been complied with when the language `has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden', or when `the crucial words [or] phrases in the criminal statute have a fixed and definite meaning for a person of ordinary intelligence.' ..." (Citations omitted).
The preceeding discussion makes it clear that in determining whether La.R.S. 40:1390 is unconstitutionally vague, the relevant inquiry is whether the term `interfere' has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden. Black's Law Dictionary defines `interfere' as, "To check; hamper; hinder; disturb; intervene; intermeddle; interpose; to enter into, or to take part in, the concerns of others." Black's Law Dictionary, 4th Edition (1968). We feel that a person of "ordinary understanding" can be reasonably held to be familiar with this generally accepted meaning of the word "interfere" and is therefore put on notice as to the activity the Legislature has proscribed in La.R.S. 40:1390. For this reason, we reject the defendant's constitutional challenge.
Defendant would also have us declare La.R.S. 32:52 unconstitutionally vague. That statute provides:
"No person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to so do as required by the laws of this state nor shall any person permit or allow any other person to drive or operate any vehicle owned or controlled by him upon highways of this state unless and until such other person has been issued a license to so do as required by the laws of this state."
We find absolutely no vagueness or ambiguity in the wording of this statute and consequently find absolutely no merit to defendant's averment of unconstitutionality in this regard.
The defendant further alleges that the evidence presented by the State was insufficient to justify his conviction on the charges of "operating his vehicle without a license" and "interfering with a state police officer". In addition, he alleges that there was no evidence presented by the State *1071 which demonstrated that he possessed any criminal intent to commit any crime.
Insofar as the charge of interfering with a police officer is concerned, it is defendant's contention that his conduct on the night in question was not contemplated by the drafters of La.R.S. 40:1390 because (1) he had no obligation to stay and converse with the officer, and (2) the statute does not proscribe flight.
However, defendant's argument that the trooper had no right to detain him for questioning overlooks the wealth of jurisprudence on "stop and frisk". La.C.Cr.P. Article 215.1 states in pertinent part:
"A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
Inherent in the officer's right to stop a suspect and demand his name, address and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently. State v. Fauria, 393 So.2d 688 (La.1981). This right of limited detention is conditioned upon the officer having articulable knowledge of particular facts which, with reasonable inferences drawn therefrom, are sufficient to provide reasonable grounds to suspect a person of involvement in criminal activity. State v. Varnell, 410 So.2d 1108 (La.1982). In this case the trial record clearly establishes that the officer had more than a reasonable suspicion that the defendant was in violation of the State law. The officer's observation of defendant and the girl switching places in the car immediately after he pulled up behind them and his observation that the car bore no license plate justified his belief that at least one of the occupants might reasonably be involved in criminal activity.
Therefore, he had a right to stop the car and detain the defendant for questioning.
In addition, defendant contends that his actions are not proscribed by La.R.S. 40:1390 because that statute contemplates only "positive" or "affirmative action" on the part of the accused. He maintains that running away was merely a passive act and therefore cannot be construed as "interference" within the meaning of La.R.S. 40:1390.
The defendant's argument that he did not "interfere with the duties of a police officer" is without merit. The defendant's retreat from the police officer clearly "hampered" or "hindered" the officer's investigation, regardless of whether or not it constituted an affirmative or passive action on the defendant's part. We cannot say that La.R.S. 40:1390 merely proscribes those actions on the part of the accused which can be characterized as "positive" or "affirmative". We thereby reject the defendant's argument.
Defendant further argues that the State did not meet its burden of proving that he was guilty beyond a reasonable doubt of the offense of driving without a license. Defendant bases this argument on the contention that the State never proved that he possessed the supposedly requisite criminal intent.
Although a violation of La.R.S. 32:52 is considered a criminal act (see La.C.Cr.P. Art. 933(4), La.R.S. 14:2), defendant is mistaken in asserting that criminal intent is an element of this offense. The statute itself does not have a scienter requirement nor is it necessary that such be proven, for intent is not an element of every criminal offense. State v. Terrell, 352 So.2d 220 (La.1977). La.R.S. 14:8 defines criminal conduct in part as:
"A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent ..."
To convict defendant of violating La.R.S. 32:52 the State need only demonstrate that defendant drove a vehicle on a highway without being properly licensed. Since the trial record clearly indicates that the State proved this element beyond a reasonable doubt, we reject the defendant's claim.
*1072 Defendant next asserts that the trial court erred in allowing hearsay testimony into evidence. However, upon review of the record and the objections lodged by the defendant during the course of the trial, it is our conclusion that this error can be considered harmless since the testimony objected to by the defendant did not pertain to the two charges for which defendant was convicteddriving without a license and interfering with a police officer. Rather, the testimony pertained to the other two charges lodged against the defendant, for which he was ultimately acquitted.
We also find no merit in the defendant's assertion that any evidence gathered subsequent to the stop should have been excluded as the product of an illegal seizure. As previously discussed, we consider the stop to have been legal and therefore any evidence gathered subsequent thereto was not "fruit of the poisonous tree". Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Finally, the defendant maintains that the trial court erred in denying his motion for a directed verdict. However, a directed verdict, or motion for acquittal as it is properly known in Louisiana Law of Criminal Procedure, will not be granted unless the State has failed to produce enough evidence for a conviction. La.C.Cr.P. Article 778. After having reviewed the record, we feel that the evidence presented by the State was more than sufficient to sustain the defendant's conviction on both charges. Therefore, this assignment of error by the defendant is without merit.
For the above and foregoing reasons the conviction and sentence imposed upon the defendant by the trial court are affirmed.
AFFIRMED.