|2BROWN, J.
In this post-trial supervisory writ application, T.J. Moore seeks reversal of his misdemeanor conviction for interfering with police officers in violation of La.R.S. 40:1390. We find no error, however, and deny the writ application.

Background

The state charged applicant with violating La. R.S. 40:1390, “Resisting arrest and interference with officers.” That statute, which is not identical to La. R.S. 14:108, “Resisting an officer,” provides in part that “[a]ny person who ... interferes with or obstructs ... any officer or agent [of the division of state police in the department of public safety] in the lawful performance of any duty imposed on him by this Sub-part of any duty assigned to him under authority of this Sub-part ... shall be subject to a fine and imprisonment for not less than thirty days nor more than six months, or both.”
The gist of the charged violation is that applicant, who is quite large and muscular, refused to move on when ordered to do so by Louisiana State Troopers James Richardson and David Bruce who were in the process of arresting another man. Applicant’s action consisted of standing near the officers [a distance of six to ten feet] after being repeatedly asked by Trooper Richardson to move away. Applicant did not touch either officer; he simply refused to move. Trooper Richardson’s rationale for asking applicant to move was safety; applicant is large and muscular, it was dark, and the officers were in a tactically disadvantageous position and were threatened by applicant’s apparent ability to harm them if he chose to do so.

Synopsis of trial testimony

At 11:10 p.m. on September 7, 1997, James Richardson, a Louisiana State Trooper with 13 years experience, and his partner David Bruce stopped a vehicle driven by Madison Goins. Because his driver’s license was suspended, Goins was [¡¡placed under arrest. The troopers and Goins were at the front of the police vehicle when applicant walked up and stood on a grassy area about six feet from the parties. Applicant arrived as Trooper Bruce was handcuffing Goins.
Trooper Richardson asked applicant to move up or down the sidewalk. Trooper Richardson had no idea who applicant might be. It was night and the area was dark. Richardson had trouble seeing applicant and believed applicant was “an obvious officer safety factor.”
Applicant replied that this was his neighborhood and remained where he was standing. Trooper Richardson repeated his request to move on twice; applicant reiterated that it was his neighborhood and stood his ground. Applicant said he was the “neighborhood watch.” He also said, “you can’t make me move.” At that time, Trooper Bruce moved Goins to the back of the police vehicle. Both troopers were in uniform and their vehicle was fully marked. Trooper Richardson stated that he felt “forced” to move in between his partner and applicant to work as a “cover element.” Applicant continued to stand on the corner.
Once Goins was in the police car, applicant walked toward the officers. Applicant was described as “glaring at” the officers. Trooper Richardson made a tactical defensive move to distance himself from Trooper Bruce. Richardson told applicant that unless he moved away from *805 the arrest scene he would be arrested for resisting. Applicant said he wasn’t going anywhere.
Trooper Richardson told applicant he was under arrest for resisting and told him to turn around with his hands behind his back. Applicant brought his hands up and crossed them. Richardson unsheathed his baton. Applicant began rapidly moving toward Richardson.
Trooper Richardson told applicant to stop. Applicant kept moving toward Richardson. Richardson took a side step and struck applicant with the baton on the left middle thigh to stop him. Trooper Bruce grabbed applicant. There was a 1 ¿struggle, but the troopers eventually restrained applicant. Trooper Richardson called Troop F for assistance. A deputy sheriff was dispatched, arrived at the scene and with his help the troopers finally handcuffed applicant.
After being advised of his rights, applicant said that he had been sitting at his house drinking when he saw the traffic stop. He wanted to make sure the police weren’t going to harass Goins or violate his rights.
Trooper Richardson was concerned because applicant had been a silhouette at the arrest scene, which placed the officer in a tactically disadvantageous position. On cross-exam, Richardson agreed that the location where the traffic stop occurred was “a majority black neighborhood” and that it was night and the area was dark. Richardson testified that applicant never cursed at the police officers, nor did he commit any overt crime before Richardson asked him to move. The crime applicant committed was refusing to move away from the arrest scene. According to Trooper Richardson, applicant was “creating a danger” to Richardson, the other officer and the arrested person by his close presence to the officers. Other than standing there, applicant did nothing to stop Richardson and his partner from completing the arrest. Applicant was on the sidewalk each time that Richardson asked him to move.
On redirect, Trooper Richardson said that state police policy was to perform an inventory on vehicles of arrested persons. He hadn’t done that when applicant arrived. Applicant refused to move in a “sarcastic, taunting” tone of voice. Based on Richardson’s experience, he became more concerned. A “normal person” would have complied with the request and moved on. Applicant “could have been on us in a flash [due to] that close proximity.”
On re-cross, Richardson said that he had not decided whether to conduct an inventory of Goins’ car at the time of applicant’s arrest.
Trooper Bruce testified that applicant was “agitated” or “upset” with the 1 ¡¡officers when he was told to move. Applicant commented that he didn’t have to move, he would call the mayor, he was the neighborhood watch. Bruce was concerned by applicant’s closeness to the arrest scene. Applicant interfered only by his presence. He also was screaming that “he was the neighborhood watch, this is my neighborhood, you can’t make me move, he’d call the mayor.” He said that several times. Applicant was arrested solely because of his refusal to move away from the “crime scene” which caused a danger to the troopers.
Madison Goins testified for the defense. He said that he hadn’t seen applicant at the time of the traffic stop until Goins was handcuffed. Applicant didn’t do or say anything to the troopers. The police just walked up to applicant and hit him on the leg, according to Goins. On cross-examination, Goins testified that the police had politely asked applicant to step back or to get further away. Applicant backed up “a little” and told the troopers he was the neighborhood watch.
Applicant took the stand. He testified that he had merely wanted to observe the officers and maybe get the number of their patrol car. Once applicant got to the ar *806 rest scene he “never moved from fear of being shot.” Applicant agreed that when Richardson told him to move on he said that he was the neighborhood watch and refused to move. This occurred two or three times before Trooper Richardson told applicant he was under arrest. Then applicant “just kind of turned” and Richardson hit him with a baton.
On cross, applicant said he remained on the public sidewalk during the entire incident. Although he could have walked away he chose not to do so. Applicant said he never raised his voice. He denied telling the troopers they couldn’t make him move. Applicant said he is six feet three inches tall and weighs 267 pounds.
The court found applicant guilty and ordered him to pay a fine of $100 and | fito serve 30 days in jail. The court suspended execution of the jail term. Applicant filed the instant writ application.

Discussion

The key question appears to be whether applicant’s actions constituted interference with the troopers’ performance of their duty. There are very few cases which deal with La. R.S. 40:1390. The statute has been upheld and the term “interfere” held not to be constitutionally vague. State v. Pickering, 432 So.2d 1067 (La.App. 3d Cir. 1983), writ denied, 438 So.2d 574 (La. 1983). The court in Pickering also found that a defendant’s act of fleeing from a police investigation hampered the investigation so as to constitute a violation of R.S. 40:1390. Interference with a traffic accident investigation by being belligerent and threatening the investigating officer was found to justify an arrest and conviction under this statute in Nigreville v. State Dept. of Public Safety, 415 So.2d 600 (La. App. 3d Cir.1982), writ denied, 420 So.2d 444 (La.1982).
These cases are noteworthy in that they upheld convictions for interference with a mere investigation. Under the very similar La. R.S. 14:108, one cannot interfere with police unless they are attempting to seize property, serve process or make an arrest at the time of the defendant’s act. State v. Nix, 406 So.2d 1355 (La.1981); State v. Huguet, 369 So.2d 1331 (La.1979). The supreme court in both cases held that interference with an investigation did not constitute “interference” under R.S. 14:108 because the officers were not attempting to seize property, serve process or make an arrest.
Equally, La. R.S. 14:108 has been found inapplicable to a police order to move on when the officer is not attempting to seize property, serve process or make an arrest at the time of the order. State v. Green, 97-702 (La.App. 5th Cir.12/30/97), 706 So.2d 536; Melancon v. Trahan, 94-26 (LaApp. 3d Cir.10/5/94), 645 So.2d 722. However, a refusal to comply with an order to move when the |7police are attempting to make an arrest is a violation of R.S. 14:108. In State v. Washington, 98-545 (La.App. 5th Cir.12/16/98), 725 So.2d 587, the court affirmed a conviction for resisting arrest by disobeying an order to remain. Police officers were in a high crime area making an arrest. They saw three men nearby, one of whom was armed. The police told the men to stay where they were. Defendant walked into a house. The police followed, found him near a firearm, and arrested him for resisting. The court in State v. Johnson, 534 So.2d 529 (La.App. 5th Cir.1988), affirmed a conviction for resisting where the defendant yelled obscenities at police and refused to move away when requested to do so by officers who were in the process of arresting a third party.
The jurisprudence supports a conviction for violation of La. R.S. 40:1390 based on interference with an investigation. See Pickering, supra, and Nigreville, supra. Thus, the courts have given that statute a broader reach than is afforded to the police by La. R.S. 14:108.
Refusal to move away from police who are in the process of making a lawful arrest of a third party constitutes interfer *807 ence, as does refusal to comply with an order to remain. Johnson, supra, and Washington, supra.
Here, the state troopers were in an unlit neighborhood late at night making an arrest. Applicant, who was much larger than either trooper, showed up unexpectedly and remained a silhouette in the darkness. He stood close enough to the troopers that he could reach them in a moment. He refused multiple requests to move away. Both troopers felt uncomfortable or intimidated due to applicant’s proximity. Trooper Richardson had to move himself into a position to cover his partner from the possible threat posed by applicant. Thus, applicant took Richardson’s attention away from the arrest. That was an interference with the arrest.
Therefore, the court did not err in finding there was probable cause to effect j Rapplicant’s arrest nor did the court err in finding applicant guilty as charged.

Conclusion

For the reasons expressed above, the writ application is denied.