**David REYNOLDS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6432.**

Court of Appeals of Alaska.

Dec. 10, 1982.

Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, for appellant.

Larry R. Weeks, Dist. Atty., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

PER CURIAM.

David Reynolds was convicted of fishing in closed waters in violation of 5 AAC 06.-350(b). He appeals, contending that the trial judge's failure to require a showing of *mens rea* was error. We agree, and therefore reverse Reynolds' conviction.

Reynolds is a commercial fisherman in the Bristol Bay area. On July 21, 1981, his boat drifted up the Kvichak River with the tide past two shore markers beyond which gill net fishing is prohibited. Reynolds had

---

one drift gill net in the water. Two Fish and Wildlife Protection officers observed Reynolds' boat as it drifted past the markers. The officers then approached the craft, asked Reynolds to pull in his net, and eventually issued a uniform summons and complaint. One of the officers testified at trial:

> When we approached the boat ... we called out 'hello' and there was no response, so we pounded on the side of the boat, and Mr. Reynolds came out groggy and said he'd been sleeping.

Reynolds appeared *pro se* at trial, and he testified on his own behalf that he had no intention of drifting into the closed area. He was very tired on the evening of July 21 and decided to get some sleep. Before setting his alarm clock and lying down, Reynolds calculated his position and estimated that the boat would not drift into closed waters. His particular fear was that he might drift into the set net sites located in those waters and tangle his gear; it was this fear which caused him to make the calculations with some care.

It was not developed at trial whether Reynolds' calculations, his fatigue, his alarm clock or some combination of these factors accounted for this somnolent transgression. The judge's response to Reynolds' testimony and argument was succinct:

> Thank you. Fish and Game laws are just like traffic laws. It doesn't require an intention to violate them, and so if one violates them, they're guilty. And therefore you're found guilty.

Reynolds was assessed a fine of $5,000 with $3,000 suspended on condition that he violate no similar laws for one year. His nets and the six fish found in them at the time of the offense were forfeited, pursuant to AS 16.05.190 and AS 16.05.195. The trial judge remarked at this time:

Now you've gotten a better deal than anyone else has from this court because I believe that you did it completely unknowingly. I believed you.

AS 16.05.251(2) authorizes the Board of Fisheries to promulgate regulations establishing "open and closed seasons and areas for the taking of fish." Pursuant to this authority, the Board designated the particular waters of Kvichak Bay in which Reynolds was found as "closed waters." 5 AAC 06.350(b). Violation of a regulation pertaining to commercial fisheries is a misdemeanor punishable by a fine of not more than $5,000 or one year's imprisonment or both. AS 16.05.720(a). Despite the substantial nature of the penalty to which an offender is thus exposed, the regulation does not, on its face, require any accompanying mental state or criminal intent.[1] Thus, according to the view apparently held by the trial judge, proof that a defendant was in a prohibited area and that he had a net in the water[2] would make out a *prima facie* case that the regulation had been violated.

However, the Alaska Supreme Court has repeatedly expressed its aversion to the imposition of criminal sanctions against one who has no "awareness or consciousness of some wrongdoing." *Speidel v. State,* 460 P.2d 77, 78 (Alaska 1969); *see also Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288, 293 (1952). The statute in *Speidel* made it a felony to wilfully neglect to return a rented motor vehicle to the owner and included within the definition of wilful neglect an "indifference whether a wrong is done the owner or not." *Id.* The court held that:

> Although an act may have been objectively wrongful, the mind and will of the doer of the act may have been innocent. In such a case the person cannot be pun-

---

1. This regulation can be distinguished from those which require proof that the offender "knew or should have known" of a particular circumstance. *See, e.g.,* 5 AAC 31.090(c); 5 AAC 32.090(c); 5 AAC 34.090(c).

2. This element of the offense would more properly be designated as "fishing," and would pre-sumably require the present capability, such that no further act is required, to hook or trap a fish. Reynolds does not contend that his drift gill net was not, at the time of his contact with the Fish and Game officers, capable of catching a fish, so the precise definition of this element is not at issue here.

ished for a crime, unless it is one such as the "public welfare" type of offense, which we have discussed, where the penalties are relatively small and conviction does no great damage to an offender's reputation. Under the terms of AS 28.-35.026 there is no escape from a felony conviction and a possible five-year prison term for simple neglectful or negligent failure to return a rented automobile at the time specified in the rental agreement. To make such an act, without consciousness of wrongdoing or intention to inflict injury, a serious crime, and criminals of those who fall within its interdiction, is inconsistent with the general law. To convict a person of a felony for such an act, without proving criminal intent, is to deprive such person of due process of law.

*Id.*, 460 P.2d at 80. Thus, "public welfare offenses," described earlier as those in which health, safety or welfare of the general public is involved, and for which no great penalty is generally imposed, were expressly reserved by *Speidel* as special cases in which strict criminal liability might be imposed.

*Hentzner v. State*, 613 P.2d 821 (Alaska 1980), relied on *Speidel* to impute knowledge of wrongdoing as an element of a securities offense. A distinction was made for *mens rea* purposes between offenses which are *mala in se* (those "which reasoning members of society regard as condemnable") and those which are *mala prohibita* (where "there is no broad societal concurrence that [the proscribed conduct] is inherently bad"). *Id.* at 826. The fact that the crime in *Hentzner* was essentially *malum prohibitum* militated in favor of requiring *mens rea*. Moreover, the court felt impelled to remove the offense from the "public welfare" category because of the possible penalty involved (a maximum term of five years' imprisonment), a collateral rationale in *Speidel*. 613 P.2d at 826–27.

The contours of strict criminal liability were further defined in *State v. Rice*, 626 P.2d 104 (Alaska 1981). *Rice* dealt with a regulation providing that, "No person may possess or transport any game or parts of game illegally taken." 626 P.2d at 106, n. 2. Rice was convicted in district court, but the superior court overturned the conviction on the basis that it was error for the trial judge to refuse to instruct the jury that it must find beyond a reasonable doubt that the defendant "knew or should have known" the meat was illegally taken. *Id.* at 106. The supreme court affirmed, relying on *Speidel* for the proposition that criminal statutes should be strictly construed to require some degree of *mens rea* absent a clear legislative intent to the contrary. *Id.* at 107–08. The court recognized that "the mere fact that the case at bar involves a fish and game regulation might perhaps be considered by some to be sufficient to justify characterization of the subject offense as a strict liability offense," but declined to do so where application of such a statute would violate a defendant's due process rights. *Id.* at 108. Without imputing a requirement that defendant "knew or should have known" the meat was illegally taken when he transported it, the statute as applied would be "void for vagueness," according to the court. *Id.* at 109.

The teaching of these cases is that strict liability is an exception to the rule that criminal intent is required. The decision whether to require that a mental state be read into a statute or regulation, even in the context of fish and game violations, must be made on a case-by-case basis. *State v. Rice*, 626 P.2d at 108; *Kimoktoak v. State*, 584 P.2d 25, 31 (Alaska 1978). By not requiring the prosecution to produce evidence that Reynolds was at least negligent with respect to the location of his boat, the court here imposed a classic form of strict liability. Given the nature of the regulation in question and the circumstances of this case, we find that the trial judge erred in not requiring some minimal element of *mens rea, i.e.,* negligence, to accompany Reynolds' conduct.

Contrary to the state's assertion, strict liability does not necessarily follow from either the fact that fishing is a heavily regulated activity in Alaska or that Reyn-

olds entered into this activity for commercial purposes. This is not an offense like that in *Nelson v. State,* 387 P.2d 933, 935 (Alaska 1964), where "[t]o require proof of guilty knowledge as a prerequisite to conviction . . . would mean that the regulation could not be enforced." In *Nelson* the court was faced with a statute prohibiting the taking of a bear under two years of age. Because it is difficult for a hunter to know the precise age of a bear, requiring the state to prove knowledge or negligence would impose an insurmountable burden and render the provision virtually unenforceable. The court in *Nelson* simply held that, under these circumstances, imposition of strict liability was clearly justified. We do not think that requiring proof that the operator of a fishing vessel was negligent, in other words, that he knew or reasonably should have known the vessel's location, would pose a similar hardship on the state.[3] Only in occasional cases, such as Reynolds', will the issue admit of much doubt.

Moreover, although the regulation in question, 5 AAC 06.350(b), pertains to a traditionally regulated commercial activity, this activity is not, by its nature, restricted to large-scale, sophisticated business enterprises. Instead, the regulation applies to all commercial fishing and would include within its sweep the smallest and most casual commercial fishing enterprises. In this regard, it is significant that the regulation here has not expressly been designated as

creating a strict liability offense.[4] Especially in the context of regulatory provisions, which can be modified or re-enacted more expeditiously and with less complexity than can formal statutory provisions, we do not think it unrealistic to expect that, if a provision is intended to create a strict liability offense, an express statement to that effect will be included. Finally, the state has not called to our attention, nor are we aware of, any legislative history indicating that 5 AAC 06.350(b) was promulgated with the intent that it be applied as a strict liability offense, precluding any defense based on reasonable mistake of fact. *Cf. United States v. Ayo-Gonzalez,* 536 F.2d 652, 658–60 (5th Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977) (legislative history of a federal statute prohibiting unauthorized fishing by foreign vessels in territorial waters of the United States disclosed a belief by Congress that effective and strict enforcement was essential, a finding that innocent offenses were unlikely to occur, and persuasive evidence that strict liability was intended to be applied).

These considerations, when taken with the substantial criminal penalties available to a court in sentencing for this offense, are sufficient to convince us that strict liability is inappropriate here. We therefore hold that a showing of negligence on the part of the defendant—that he knew or reasonably

---

**3.** The state argues that, if 5 AAC 06.350(b) were construed to require an element of criminal intent, enforcement of the provision would be rendered difficult because juries sympathetic to a defendant's plight would invariably rely upon the intent requirement as a means of nullifying a generally unpopular regulation. Assuming *arguendo* that the state's argument is accurate as a factual matter, it hardly seems appropriate to resolve problems in enforcement of unpopular laws by the elimination of criminal intent and the imposition of strict liability.

**4.** We note that AS 11.81.600(b), applicable only to Title 11 but persuasive in its logic, specifically provides:

(b) A person is not guilty of an offense unless he acts with a culpable mental state, except that no culpable mental state must be proved

(1) if the description of the offense does not specify a culpable mental state and the offense is

(A) a violation; or

(B) designated as one of 'strict liability'; or

(2) if a legislative intent to dispense with the culpable mental state requirement is present. The revised criminal code further provides that except as described above, "if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to

(1) conduct is 'knowingly'; and

(2) a circumstance or a result is 'recklessly.'"

AS 11.81.610. While this scheme has removed much of the speculation about mental states under Title 11, no such relief has yet been provided under the Alaska Administrative Code or its statutory corollaries.

should have known the location of his boat in closed waters—was necessary before a finding of guilt would be justified. Because the trial court applied strict liability in the determination of Reynolds' guilt, we REVERSE the conviction.