**Einar LANGESATER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7357.**

Court of Appeals of Alaska.

Aug. 26, 1983.

## OPINION

SINGLETON, Judge.

Einar Langesater was convicted of operating an overlength vessel in violation of 5 AAC 06.341. Langesater appeals contending that the trial court erroneously concluded that the regulation determining the length of fishing vessels was a strict liability offense and erred in denying his motions

for judgment of acquittal and to dismiss the complaint on the ground that the regulation was unconstitutional. We agree with Langesater's first contention and reverse. We decline to address Langesater's constitutional arguments finding that the record is inadequate to enable us to resolve them.

5 AAC 06.341 provides:

No vessel registered for salmon net fishing may be more than 32 feet in overall length. For the purposes of this section "overall length" means the straight-line measurement between the extremities of the vessel, but does not include rollers used in the deployment or retrieval of gill nets or anchors.

This regulation was enacted by the Board of Fish and Game under the authority granted in AS 16.05.251(a)(4). AS 16.05.-720(a) provides:

[A] person who violates ... the regulations of the department pertaining to commercial fisheries is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $5,000, or by imprisonment for not more than one year, or by both.

In 1979, Langesater purchased a thirty-four foot aluminum fishing boat, the Herring III, for use in the Bristol Bay salmon fishery. Because 5 AAC 06.341 prohibits salmon net fishing vessels greater than thirty-two feet in length, Langesater had the Herring III modified; the modification was a detachable nose piece. When the nose piece is removed, the Herring III measures thirty-two feet in length.

On July 1, 1982, when Langesater set his nets to fish, the Herring III measured thirty-four feet because the nose piece was attached. Officer Dykema, a Fish and Wildlife officer, observed the boat gillnet fishing and cited Langesater for a violation of 5 AAC 06.341. At trial, the court rejected Langesater's request for a *mens rea* instruction, and instead instructed the jury that Langesater would be strictly liable if he in fact had engaged in gillnet salmon fishing with a boat more than thirty-two

feet in overall length. The jury returned a verdict of guilty and Langesater appeals.

In *Reynolds v. State,* 655 P.2d 1313, 1315 (Alaska App.1982), we held that where the Board of Fish and Game determines that violation of a regulation promulgated under statutory authority is a crime punishable by imprisonment and fine, but fails to explicitly provide for strict liability,[1] we will construe the regulation to require the state to prove, at the very least, that a person violating the regulation acted negligently. In *Reynolds,* we recognized that the appropriate *mens rea* for fish and game regulations would have to be established on a case-by-case basis, taking into account the nature of the offense and any legislative history surrounding the enactment of the regulation. *Id.* We recognized that strict liability might be appropriate for an offense such as that discussed in *Nelson v. State,* 387 P.2d 933 (Alaska 1964), which involved a regulation which forbade shooting a bear under two years of age. The supreme court concluded: "To require proof of guilty knowledge as a prerequisite to conviction in such a case would mean that the regulation could not be enforced." *Id.* at 935.

Given the fact that those charged with criminal offenses are deemed to know the law and cannot argue mistake of law as a defense, we do not believe that the state would face an insurmountable burden in showing that Langesater knew or should have known the length of his boat. The state has not called to our attention any legislative history indicating that 5 AAC 06.341 was intended to be applied as a strict liability offense precluding any defense based on reasonable mistake of fact. We conclude that the trial court erred in failing to instruct the jury that Langesater must, at the very least, be negligent in failing to recognize that his boat was more than thirty-two feet long before he could be convicted of violating the regulation.

Finally, we are not pursuaded that any error in instructing the jury was harmless. Alaska R.Crim.P. 47(a). Langesater argued

1. We note that the fish and game regulations have subsequently been amended to expressly provide for strict liability. *See* 5 AAC 39.002.

The new regulations became effective July 1, 1983.

that he reasonably believed that the nose piece on his boat constituted an "anchor roller" expressly exempted from consideration in determining the ship's length. However implausible this argument was under the facts, Langesater had a right to have the jury consider it.

 Langesater argues, in addition, that the trial court erred in denying his motion for judgment of acquittal. The circumstances surrounding Langesater's acquisition of the Herring III and its modification would clearly support a jury finding that he knew or should have known that his boat, with the nose piece attached, exceeded thirty-two feet. The trial court did not err in denying the motion for judgment of acquittal.

Langesater also asserts constitutional claims. He contends that the regulation limiting salmon fishing boats to thirty-two feet in length violates the equal protection clause of the state and federal constitutions, deprives him of substantive due process under the state and federal constitutions, operates as an unreasonable burden on interstate commerce, and is outside the authority granted by the statute under which it was enacted. Essentially, all of these arguments rely on the proposition that there is no rational connection between a thirty-two foot limitation and any public policy. We are unable to reach any of these arguments because the record is insufficient. In order to determine the purposes for which the regulation was enacted and whether those purposes warrant any restrictions on Langesater's liberty and interstate commerce, we must know the legislative facts assumed by the Board of Fish and Game in enacting the regulation. *See State v. Erickson,* 574 P.2d 1, 4–7 (Alaska 1978). While an appellate court is not bound by the trial court's legislative factual determinations, the trial court provides a far better forum for the gathering of legislative factual data and the investigation of legislative purposes than does an appellate forum.

Langesater argues, however, that the burden of proving legislative facts supporting enactment of the regulation fell on the state and that the state's failure to sustain that burden warrants judgment in Langesater's favor, holding the regulation unconstitutional as to him and prohibiting his prosecution under it. He relies on *Kingery v. Chapple,* 504 P.2d 831 (Alaska 1972). In *Kingery,* the supreme court considered a regulation requiring motorcyclists to wear helmets. We believe Langesater's reliance on that case is misplaced.

The purpose of regulations, such as the challenged one in *Kingery,* is considered to be public protection against physical injury. When that type of a regulation is being considered, the burden rests on the state to justify the regulation. *Id.* at 835. While the precise purposes served by the length regulation challenged by Langesater are unclear, we are satisfied that it was not enacted to protect the public from physical injury. Consequently, Langesater bore the burden of showing the lack of a rational basis between the thirty-two foot regulation and public policy. This is particularly true where the regulation is directed at a heavily regulated industry. *Cf. Union Oil Company v. State,* 574 P.2d 1266, 1272 (Alaska 1978). Naturally, in sustaining this burden, Langesater should be allowed reasonable discovery and an opportunity to make a factual showing in the trial court. We are confident that on remand, Langesater will be given that opportunity.

The record reflects that the trial court in this case relied upon an unpublished opinion reached by another judge in a similar case in which a more extensive record was established. Since the facts under consideration are legislative facts rather than adjudicative facts, the trial court may judicially notice evidence in other cases so long as the parties are given reasonable notice and a reasonable opportunity to dispute that evidence. *See* A.R.E. 202(d).

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.