Michael ALEXANDER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–696.

Court of Appeals of Alaska.

Jan. 17, 1986.

Janet Crepps, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Russell S. Babcock, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

* Stemp, District Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Alaska Statute 28.15.291(a) provides, in relevant part:

   *Driving while license cancelled, suspended, revoked or in violation of limitation.* (a) A person may not drive a motor vehicle on a highway or vehicular way or area in this state at a time when that person's driver's license, or privilege to drive has been cancelled, suspended, or revoked in this or another jurisdiction....

2. At the time of Alexander's offense, AS 28.20.-050 provided:

   *Application of chapter.* [Title 28, Chapter 20, of the Alaska Statutes, which sets forth the Alaska Motor Vehicle Safety Responsibility Act] (a) The provisions of this chapter requiring deposit of security and suspension for failure to deposit security apply to the driver

Before BRYNER, C.J. and SINGLETON and STEMP,* JJ.

## OPINION

BRYNER, Chief Judge.

Following a non-jury trial before District Court Judge Natalie K. Finn, Michael Alexander was convicted of driving while his license was suspended (DWLS), in violation of AS 28.15.291(a).[1] On appeal, Alexander notes that there was undisputed evidence at trial establishing that, through no fault of his own, he failed to receive formal notice of his license suspension. Alexander claims, in light of this evidence, that it was error for Judge Finn to convict him.

The facts are not substantially disputed. Alexander was involved in a two-car accident on February 8, 1984. The accident resulted in substantial damage to both vehicles. Alaska State Trooper Sergeant Stewart responded to the scene. After determining that Alexander was not insured, Sergeant Stewart informed Alexander that his operator's license would be subject to suspension if he did not submit proof of financial responsibility to the Department of Motor Vehicles (DMV). Stewart also handed Alexander a printed form that contained similar advice.

On March 23, 1984, in accordance with Alaska's financial responsibility statute,[2]

and owner of a vehicle subject to registration under the laws of this state which is involved in any manner in an accident in this state resulting in bodily injury to or death of a person or damage to the property of any one person exceeding $500.

(b) Not less than 20 days after receipt of a report of such accident, the department shall determine the amount of security which it considers sufficient to satisfy any judgments for damages resulting from the accident which may be recovered against each driver or owner. The determination shall not be made with respect to a driver or owner who is exempt from the requirements as to security and suspension.

(c) The department shall determine the amount of security deposit required upon the basis of the reports or other information submitted. If a person involved in an accident as described in this chapter fails to make a report or submit information indicating the ex-

the DMV mailed Alexander a notice stating that his license would be suspended in thirty days if he did not file proof of financial responsibility. After the post office made three unsuccessful attempts at delivery to Alexander's address of record, it returned the notice to the DMV. Alexander's license was suspended by the DMV on April 23, 1984. Approximately two weeks later, on May 9, 1984, Alexander was cited for DWLS.

At trial, the parties stipulated that the notice of suspension sent to Alexander by the DMV was in compliance with the requirements of AS 28.05.121, the motor vehicle code provision governing notice.[3] In addition, however, the parties agreed that Alexander's failure to receive the DMV's notice did not result from intentional or unreasonable conduct on his part. At the conclusion of trial, Judge Finn nevertheless found Alexander guilty. Focusing on the fact that Alexander had been expressly informed by Sergeant Stewart at the accident scene that his license would be subject to suspension, Judge Finn found that even though Alexander never actually received the DMV's formal notice of suspension his failure to inquire into the status of his license during the three-month interval between his accident and the date of the offense was unreasonable. Judge Finn found that, under this court's decision in *Jeffcoat v. State*, 639 P.2d 308 (Alaska App.1982), Alexander's failure to take reasonable steps to ascertain the status of his license rendered him guilty of the offense. We conclude that Judge Finn correctly applied our decision in *Jeffcoat* to this case.

In *Jeffcoat*, the defendant appealed a conviction of DWLS, contending that the motor vehicle code's notice provision was unconstitutional because it would permit conviction of a person who, through no fault of his own, failed to receive formal notice that his license had been suspended. Specifically, Jeffcoat challenged the portion of AS 28.05.121 providing that "[t]he giving of notice by mail is considered complete ... upon return of the notice as undeliverable, refused, or unclaimed." In rejecting Jeffcoat's claim, however, we found that Alaska's DWLS statute, AS 28.15.291, implicitly required proof of *mens rea* as an element of the offense. Based on this finding, we

tent of the person's injuries or the damage to the person's property within 30 days after the accident, and the department does not have sufficient information on which to base an evaluation of injuries or damage, then the department after reasonable notice to the person, if it is possible to give notice, otherwise without notice, shall not require a deposit of security for the benefit or protection of the person.

(d) Within 30 days after receipt of report of an accident and upon determining the amount of security to be required of any person involved in the accident or to be required of the owner of any vehicle involved in the accident, the department shall give to every person written notice of the amount of security required to be deposited by the person and stating that an order of suspension will be made upon the expiration of 10 days after the notice is sent unless within that time security is deposited as required. No license may be suspended unless the licensee is afforded a hearing by the department at which it is determined that there is a reasonable possibility of a judgment being rendered holding the licensee liable.

(e) A peace officer investigating an accident that results in bodily injury to or the death of a person or damage to the property of a person exceeding $500 shall inform persons involved in the accident in writing of the requirements of this chapter as they apply to suspension of an operator's license or driving privileges.

3. Alaska Statute 28.05.121 provides:

*Giving of notice.* When the department is authorized or required to give notice under this title or regulations adopted under this title, unless a different method of giving notice is otherwise expressly provided, notice shall be given by a qualified person, either by personal delivery to the person to be notified or by registered or certified mail, return receipt requested, addressed to the person at the address of the person as shown in the records of the department. The giving of notice by mail is considered complete upon the return of the receipt or upon return of the notice as undeliverable, refused, or unclaimed. Proof of the giving of notice in either manner may be made by the affidavit of the person giving the notice by personal delivery or by mail, naming the person to whom the notice was given and specifying the time, place, and manner of giving the notice.

upheld the constitutionality of the notice statute:

> We believe that an element of knowledge must ... be read into AS 28.15.291. We believe that this conclusion, in turn, compels a finding that the notice provisions of AS 28.15.121 are valid, since a person who has not received actual notice under this statute will not be precluded from presenting a defense based upon reasonable failure to know of his license suspension.

*Jeffcoat v. State*, 639 P.2d at 313 (footnote omitted). We went on to affirm Jeffcoat's conviction, holding:

> [S]ince Jeffcoat could have defended on the basis of a reasonable lack of knowledge that his license had been suspended, the notice requirements of AS 28.05.121 cannot be construed to have violated his constitutional right to due process.

*Jeffcoat v. State*, 639 P.2d at 314 (footnote omitted).

We think *Jeffcoat* makes it clear that, in the present case, the critical question was whether it was reasonable for Alexander to be unaware of his license suspension at the time of his offense. Alexander, however, emphasized the language of footnote four in *Jeffcoat:*

> Obviously, the state need not affirmatively prove actual notice in each case. When evidence produced at trial indicates that the defendant had cause to believe that his license would be suspended, compliance by the state with AS 28.-05.121 may give rise to an inference that the defendant's failure to receive actual notice was the result of intentional or unreasonable conduct on his part which was calculated to avoid receipt of notice of his license suspension. In such cases, the issue whether the defendant was rea-

sonably unaware of his license suspension would be one to be decided at trial as a factual matter. *See, e.g., State v. Collova*, 76 Wis.2d 473, 255 N.W.2d 581, 588 & nn. 9 & 10 (Wis.1977); *City of Albuquerque v. Juarez*, 93 N.M. 188, 598 P.2d 650, 653 (N.M.App.1979).

639 P.2d at 313 n. 4. Relying on this passage, Alexander urges us to hold that the proper focus in his case should have been on the reasonableness of his failure to receive the DMV's formal notice of suspension, rather than on the broader issue of the reasonableness of his failure to be aware of the suspension itself.

We find Alexander's interpretation of *Jeffcoat* to be incorrect. Our statement in footnote four indicates that failure actually to receive the formal notice of suspension required by AS 28.05.121 is relevant as an aspect of the *mens rea* issue in DWLS cases. Thus, failure to receive the formal DMV notice, if not the result of deliberate or unreasonable conduct, may be relied on as a basis for acquittal in a DWLS case where there are no circumstances to establish that the accused otherwise knew or reasonably should have known that his license was actually suspended.

Nothing in the language of *Jeffcoat* indicates, however, that an acquittal would be justified where the evidence establishes that—despite his failure to receive the formal notice of suspension—the accused was actually aware or reasonably should have been aware of the fact that his license was suspended. As we emphasized in *Jeffcoat*, the ultimate question for the fact-finder with respect to *mens rea* in a DWLS case is "whether the defendant was reasonably unaware of his license suspension." *Jeffcoat v. State*, 639 P.2d at 313 n. 4.[4]

---

4. We believe this point is made clear in *Jeffcoat* by our reliance on *State v. Collova*, 76 Wis.2d 473, 255 N.W.2d 581 (1977), where the Wisconsin Supreme Court held:

> We believe the legislature intended to include as an element of the offense under sec. 343.44 [the challenged regulation] that the defendant has cause to believe that his driver's license might be revoked or suspended. A defendant

has cause to believe his license might be revoked or suspended when:

(1) He has knowledge of the revocation or suspension; or

(2) He has received notification of the revocation or suspension; or

(3) He has knowledge of, or a reasonable person in the defendant's situation, exercising reasonable diligence, would have knowledge of, the existence of facts or circumstances

In the present case, Judge Finn correctly interpreted our decision in *Jeffcoat.* There was ample evidence from which the judge could find that Alexander's failure to take any steps prior to his offense to ascertain the actual status of his license was unreasonable. It is apparent that Judge Finn did not simply assume that Alexander had a generalized duty to be aware of the status of his license or that he should have inquired merely because he had been in an accident. Rather, Judge Finn found that Alexander had been furnished with written notice of the financial responsibility law as required by statute and had expressly been told that his license would be suspended if he did not comply with the financial responsibility statute. We conclude that Judge Finn did not err in reaching her verdict.[5]

The conviction is AFFIRMED.

COATS, J., not participating.

---

which, under Wisconsin law, might cause the revocation or suspension.

255 N.W.2d at 588 (footnotes omitted), *cited in Jeffcoat v. State,* 639 P.2d at 313.

Alexander argues that Jeffcoat's reliance on *Collova* was dicta. He urges us to reject *Collova* and adopt, instead, the approach taken by the Oregon Court of Appeals in *State v. Monaco,* 55 Or.App. 122, 637 P.2d 221, 223 (1981). *Monaco* is distinguishable, however, since in that case the Oregon court based its decision on a statute requiring actual knowledge of the license suspension. *Id.*

5. In the present case, as in *Jeffcoat,* 639 P.2d at 314 n. 5, it is unnecessary in light of the arguments raised by the parties for this court to decide the precise scope of the *mens rea* requirement for the offense of DWLS. While we decided in *Jeffcoat* that DWLS was not a strict liability crime, we did not have occasion to determine whether the culpable mental state for the offense should properly be negligence or recklessness. In the present case, Judge Finn's findings seem to indicate that the judge applied a negligence standard in determining Alexander's guilt. Alexander has not argued, however, that the applicable culpable mental state should be recklessness or that the trial court erred in applying a negligence standard. In any event, it seems evident that use of recklessness as the applicable standard in this case would have been unlikely to result in acquittal. As we have held in other contexts, *see, e.g., Neitzel v. State,* 655 P.2d 325, 330 (Alaska App.1982), both recklessness and negligence require the existence of a substantial and unjustifiable risk, the primary distinction between the two mental states being that recklessness requires a subjective awareness of the risk, while negligence does not. In the present case, Judge Finn's verdict was based in major part on the finding that Alexander had been expressly told that his license would be suspended if he did not comply with the financial responsibility statute. Given this finding, there is little doubt Judge Finn would have found that Alexander was actually aware of the risk that his license might be suspended.