**Eugene R. GREGORY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1102.**

Court of Appeals of Alaska.

April 18, 1986.

---

D. Randall Ensminger, Law Office of D. Randall Ensminger, Fairbanks, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, Alan Hooper, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Eugene R. Gregory appeals his conviction for driving while license suspended (DWLS), AS 28.15.291. We affirm.

The Department of Motor Vehicles, Division of Motor Vehicles, suspended Gregory's license based upon an accumulation of points. *See* AS 28.15.221; 13 AAC 8.210–290. The period of suspension was from February 11 to March 10, 1985. The department mailed a certified letter containing notice of the suspension to Gregory on January 9, 1985. Notice of the certified letter was delivered to Gregory's post office box on January 11, and again on January 16, but the letter was not claimed, and the post office returned the letter to the department on January 26, 1985.

On March 9, 1985, Gregory was stopped for speeding. After the officer decided not to issue a citation and returned Gregory's license, Gregory stated that he had received a letter from "DOT," and asked the officer to check to see if his license was suspended. The officer learned that the license was suspended and arrested Gregory for DWLS.

Gregory's defense at trial was that he was neither aware of nor reckless with regard to the suspension. He testified that he was aware of the point system and that a license could be suspended based upon an accumulation of points. He also testified, however, that he did not know how many points are required for suspension or how many are assessed for various offenses. Furthermore, Gregory stated that his last traffic offense was on March 14, 1984, and that he did not really suspect that his license had been suspended on points.

Gregory only checks his post office box once or twice a month. He checked the box the first week in February and found the two notices of a certified letter. When he presented the notices to a post office employee, she told him that the letter had been returned to the sender, which she believed was the Department of Transportation in Juneau. Gregory testified that he called the Department of Motor Vehicles and the Department of Transportation to ask how he could determine the contents of the letter, but the people he talked to could not help him. Gregory had checked the status of his license sometime in the two months after his last traffic offense and was told it was not suspended. However, he did not specifically check the status of his license with the Department of Motor Vehicles after learning of the certified letter. Gregory thought the letter might relate to the fact that his vehicle had been involved in an accident at a time when he was not insured, but Gregory "[did not] know all the ins and outs of the insurance laws."

At the close of the evidence, the court noted that there had been references to a mental state. Gregory's counsel had specifically referred to recklessness during his opening argument. The court also noted that no mental element appears on the face of AS 28.15.291 and stated that he had previously given an instruction according

to the language of AS 11.81.900(a)(4), making criminal negligence the applicable mental state. Over defense objection, the jury was eventually instructed that in order to convict, it had to find that Gregory "knew, or with criminal negligence, disregarded the circumstances [sic] that his license had been suspended." The jury was also instructed, in accordance with AS 11.81.900(a)(4):

A person acts with "criminal negligence" with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

The jury found Gregory guilty of DWLS.

On appeal, Gregory argues that the court erred in rejecting the instructions he proposed, under which the jury would have been told that it had to find that Gregory "knew or recklessly disregarded the circumstance" of suspension, and that:

A person acts "recklessly" with respect to a circumstance described by the law when he is aware of and consciously disregards a substantial and unjustifiable risk that the circumstance exists. The risk must be of such a nature and such a degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

This instruction tracks the language of AS 11.81.900(a)(3).

In *Jeffcoat v. State,* 639 P.2d 308, 314 (Alaska App.1982), we held that AS 28.15.291 implicitly requires proof of *mens rea* as an element of the offense and that the defendant could have defended on the basis of a reasonable lack of knowledge that his license had been suspended. We recently affirmed this portion of *Jeffcoat* in *Alexander v. State,* 712 P.2d 416 (Alaska App. 1986). In *Alexander,* we held that the trial court had essentially applied *Jeffcoat* and that there was ample evidence from which the trial judge could have concluded that Alexander's lack of awareness of his license suspension was unreasonable. We went on to state:

In the present case, as in *Jeffcoat,* it is unnecessary in light of the arguments raised by the parties for this court to decide the precise scope of the *mens rea* requirement for the offense of DWLS. While we decided in *Jeffcoat* that DWLS was not a strict liability crime, we did not have occasion to determine whether the culpable mental state for the offense should properly be negligence or recklessness.

*Id.* at 420 n. 5 (citation omitted). We now hold that the instruction given by Judge Crutchfield in the present case was correct.

Gregory relies heavily upon AS 11.81.610(b), which provides:

Except as provided in AS 11.81.600(b) if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to

(1) conduct is "knowingly" and

(2) a circumstance or result is "recklessly."

However, as the state points out, AS 11.81.610(b) is not applicable to offenses outside Title 11. AS 11.81.640. *See Beran v. State,* 705 P.2d 1280, 1289 n. 10 (Alaska App.1985).

In *Reynolds v. State,* 655 P.2d 1313 (Alaska App.1982), we addressed the problem of what mental state the state was required to prove before the court would be authorized to impose criminal penalties for the violation of commercial fishing regulations. There, similarly to the statute in the present case, the legislature had not provided a mental state which the state had to prove in order to show that the defendant violated the regulation in question. Additionally, as in the present case, there was no legislative history or indication that the legislature wished to have these offenses be strict liability offenses. In *Reynolds,* we concluded that the state had to show

that the defendant acted negligently in order to convict him of a commercial fishing violation in which the court was authorized to impose criminal penalties. *Id.* at 1316.

Thus, in *Reynolds*, we found that simple negligence would suffice to impose liability for a commercial violation in a heavily regulated industry. However, unlike *Reynolds*, we conclude that, in the absence of legislative direction, something greater than proof of simple negligence should be required for conviction for driving while a driver's license is suspended under AS 28.-15.291. The ability to operate a motor vehicle approaches being a necessity for most people. Furthermore, the legislature has provided severe minimum penalties for violation of AS 28.15.291. The minimum penalty for a violation of AS 28.15.291 is ten days imprisonment and suspension of the defendant's driver's license for one year. We believe that, under these circumstances, proof of criminal negligence is the required mental state to show a violation of AS 28.15.291. Since Judge Crutchfield instructed the jury that criminal negligence was the mental state which the state was required to show, we affirm Gregory's conviction.

AFFIRMED.

SINGLETON, Judge, concurring.

The sole issue presented by this case is the propriety of a jury instruction defining the *mens rea* applicable to the offense of driving with license suspended, adapted from AS 11.81.900(a)(4) (criminal negligence). In opposition, defendant vigorously argued that an instruction based upon AS 11.81.900(a)(3) (defining recklessness) should have been given. I agree with the majority that as between the two definitions, culpable negligence is more appropriate to a charge of driving with license suspended than is recklessness.

In reaching this conclusion, I see no reason to differentiate between "criminal negligence" as defined in AS 11.81.900(a)(4) and so-called "simple negligence" or "civil negligence," which is not defined in the criminal code. I fear that the majority's passing reference to such a distinction is more confusing than helpful and might encourage the abominable practice of telling jurors in criminal cases that they must find something "more than civil negligence" in order to find "criminal negligence," without explaining the distinction between criminal and civil negligence, a distinction that most lawyers cannot articulate or agree upon and is therefore hardly helpful to a lay jury. The opinion in this case should not be read as authorizing any such elaboration on the definition in AS 11.81.-900(a)(4).[1]

---

1. In *St. John v. State,* 715 P.2d 1205 (Alaska App.1986), and *Abruska v. State,* 705 P.2d 1261, 1270 n. 7 (Alaska App.1985), we roughly compared culpable negligence under the Model Penal Code and our Alaska Revised Code with so-called objective recklessness under the Restatement (Second) of Torts §§ 500–503 (1965). Assuming that the analogy is valid, the distinction between "simple negligence" and "culpable negligence" is a function of the extent to which the defendant's conduct creates risks of harm to others out of proportion to its utility. *See* Restatement (Second) of Torts § 282, comment e, § 500 comment g (1965). *Cf. Id.* at §§ 291–293. The distinction therefore has nothing to do with the extent to which the licensing statutes impose a duty upon a driver to know the status of his license. *Cf.* Restatement (Second) of Torts § 500 comment e (1965).