Samuel J. JEFFCOAT, Appellant,

v.

STATE of Alaska, Appellee.

No. 5274.

Court of Appeals of Alaska.

Jan. 7, 1982.

---

Thomas C. L. Roberts, Whiting & Rosie, Fairbanks, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

On August 8, 1979, Samuel Jeffcoat was arrested by a Fairbanks City Police Officer and charged with driving while his driver's license was suspended, in violation of AS

28.15.291(a). Jeffcoat's license had been suspended for one month effective July 31, 1979, by action of the Alaska Department of Public Safety. The suspension was mandatory under AS 28.15.251 because Jeffcoat had accumulated fourteen points for traffic violations within a twelve-month period.

On June 29, 1979, the Department of Public Safety mailed Jeffcoat a notice of his forthcoming license suspension pursuant to AS 28.05.121. This notice was sent by certified mail, return receipt requested. The notice was addressed to Jeffcoat at 528 Fifth Avenue, Fairbanks, Alaska 99701, which was his address listed in the records of the Department. Neither Jeffcoat nor the state dispute that this address, apparently Jeffcoat's office, was the proper address to which the notice should have been mailed.

The first attempt to deliver the certified letter occurred on July 2, 1979. Jeffcoat was absent, but a notice was left at his delivery address advising him that he could claim the certified letter at the post office. A second attempt to deliver the letter occurred on July 11, 1979. Once again, Jeffcoat was absent and a notice to claim the letter was left at his address. The certified letter was subsequently returned unclaimed to the Department of Public Safety by the post office on July 20, 1979, and it was received by the Department on July 24, 1979.

The parties have stipulated that, except for two occasions, Jeffcoat was out of the State of Alaska during this entire period of time. Jeffcoat was in Fairbanks on July 13th and again on July 20, 1979; however, while in Fairbanks, he did not pick up any of his mail, including the certified letter from the Department of Public Safety.

On October 30, 1979, Jeffcoat entered a plea of *nolo contendere* to the charge of driving with a suspended license and specifically reserved the right to appeal[1] on the issue of the constitutionality of AS 28.05.-

---

1. See *Oveson v. Municipality of Anchorage*, 574 P.2d 801 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

121. He had previously moved for dismissal of his charges, arguing that AS 28.05.121 was unconstitutional insofar as it purported to permit suspension of an operator's license without actual notice to the person whose license was suspended; this motion had been denied. District Court Judge Hugh Connelly accepted Jeffcoat's plea, entered a Judgment of Conviction, and sentenced him to ten-days' imprisonment. The ten day jail sentence was mandatory under AS 28.-15.291(a). Jeffcoat appealed his conviction to the superior court, and on March 18, 1980, after oral argument, the superior court affirmed the conviction. Jeffcoat now appeals the superior court's ruling affirming the district court's Judgment of Conviction.

AS 28.05.121 reads as follows:

*Giving of notice.* When the department is authorized or required to give notice under this title or regulations adopted under this title, unless a different method of giving notice is otherwise expressly provided, notice shall be given by a qualified person, either by personal delivery to the person to be notified or by registered or certified mail, return receipt requested, addressed to the person at his address as shown in the records of the department. *The giving of notice by mail is considered complete upon the return of the receipt or upon return of the notice as undeliverable, refused, or unclaimed.* Proof of the giving of notice in either manner may be made by the affidavit of the person giving the notice by personal delivery or by mail, naming the person to whom the notice was given and specifying the time, place, and manner of giving the notice. [Emphasis added.]

As he did below, Jeffcoat attacks that portion of the statute which provides that notice will be regarded as given when a certified letter of notice is returned unclaimed, refused, or in some way designated as undeliverable. He argues that this section violates the due process clauses of the Alaska[2] and United States[3] Constitutions, since it does not require actual notice of the suspension of a person's driver's license. Jeffcoat maintains this permits the conviction of a person on a charge of driving while his or her license is suspended or revoked when that person had no knowledge that the license was suspended or revoked. Thus he contends that AS 28.05.121 in effect converts AS 28.15.291(a), which prohibits driving with a suspended license, into a strict liability statute, in which the state is not required to prove *mens rea*, or knowledge of the wrongfulness of the challenged conduct.

Jeffcoat specifically asserts that the statute is constitutionally infirm under the due process standards detailed in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18, 33 (1976). Alternatively, Jeffcoat argues that, even if this court upholds the constitutionality of AS 28.05.121, it must still find that the application of that statute to his particular situation resulted in a deprivation of his liberty without due process of law. We disagree with both arguments.

*Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), stated that while the requirements of due process will vary from one context to another, the process must be "appropriate to the nature of the case . . .," and "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objec-

**2.** Alaska Constitution, article 1, § 7:

No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

**3.** United States Constitution, Amendment XIV:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

tions." 339 U.S. at 313, 70 S.Ct. at 656, 94 L.Ed. at 873. Later, in *Mathews*, the Supreme Court formulated three factors to be considered in determining what process is due:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 334–35, 96 S.Ct. at 902–03, 47 L.Ed. at 33 (citation omitted).

Jeffcoat and the state agree that the *Mathews* test is the proper analysis, but disagree over the results of its application to the instant case. Jeffcoat argues that the private interest at stake here is considerable; he asserts that his interest is not only that of continuing the privilege of driving on Alaska roads, but is also clearly a penal interest because of the mandatory ten-day imprisonment provisions of AS 28.-15.291(a), which reads, in relevant part:

*Driving while license canceled, suspended, revoked or in violation of limitation.* (a) No person may drive a motor vehicle on a highway or vehicular way or area in this state at a time when his driver's license, or privilege to drive in this state if he is licensed in another jurisdiction, has been canceled, suspended or revoked, or when he is driving in violation of a limitation placed upon his license, even when he is driving under a license issued in another jurisdiction. *Upon conviction of a violation of this section, the court shall impose a minimum sentence of imprisonment of not less than 10 days.* [Emphasis added.]

Jeffcoat urges that the combination of the penal interest present because of the man-

datory ten-day imprisonment and the threatened loss of a driver's license creates a need for greater attention to the private interest than would otherwise be the case.

The next factor under the *Mathews* test is the risk of an erroneous deprivation of the individual's interest given the procedures employed. Jeffcoat claims that only actual notice is sufficient to prevent erroneous deprivation, because without such notice an opportunity to challenge the action might be lost. The state replies that AS 28.05.121 is reasonably calculated to result in receipt of actual notice, relying on the finding in *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321, 331 (1979) that:

[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations.

Jeffcoat admits that the requirement of actual notice as a replacement for the provisions of present AS 28.05.121 might increase the state's administrative and fiscal burdens, which must be considered as part of the state's interest in the *Mathews* balancing test, but he maintains that these possible changes are not so great as to outweigh his private interest.

Implicit in this argument is the assumption that AS 28.05.121 precluded Jeffcoat from asserting as a defense at his district court trial on the driving while license suspended charge the reasonableness of his failure to receive actual notice of his license suspension. The appellant places heavy emphasis upon the mandatory imprisonment provision of AS 28.15.291(a), and argues that the importance of the liberty interest involved is augmented by mandatory imprisonment for behavior that an individual might have no reason to believe was unlawful. Thus, Jeffcoat's assertion assumes that incarceration will occur regardless of

whether a defendant is capable of showing that he reasonably failed to receive actual notice.

Jeffcoat's second argument is explicitly based on the same assumption: that AS 28.05.121 permits conviction without a showing of knowledge or *mens rea* on the part of the defendant. He asserts that the application of AS 28.05.121 to the facts of his case resulted in his being convicted and sentenced without having received notice that the conduct performed (driving) was prohibited. Jeffcoat contends that conviction under AS 28.15.291(a) requires the presence of *mens rea*, or guilty knowledge, and that driving while license suspended is not a strict liability crime.

However, the state does not argue that AS 28.15.291(a) establishes a strict liability offense. In fact, the state concedes that a valid defense to the charge of driving while license suspended may be established by proof that the defendant reasonably believed he was in possession of a valid driver's license. The state simply contends that proof of knowledge by a showing of actual notice is not required, and that the notice provisions of AS 28.05.121 fall within constitutional limits, since a defendant is capable of establishing a defense to charges of driving with a suspended license based on a reasonable lack of knowledge that his license was suspended.

■ While AS 28.15.291(a) is silent on its face as to the requirement of knowledge or intent as an element of the offense, we believe that an element of *mens rea* must be read into the statute by implication. The Alaska Supreme Court has on several occasions found that an implicit requirement of intent or knowledge existed in a criminal statute that did not explicitly demand it. In *Kimoktoak v. State*, 584 P.2d 25, 31 (Alaska 1978), the court overruled its earlier holding in *State v. Campbell*, 536 P.2d 105 (Alaska 1975), that criminal intent could be implied in a statute silent as to intent only when that statute codified a common law crime. The court held that a statute making it unlawful for a motorist to fail to render aid and assistance following

an accident required proof that the defendant was aware of his involvement in an accident in which injuries had occurred.

■ In *Hentzner v. State*, 613 P.2d 821 (Alaska 1980), the court, in construing the meaning of the term "willfully" as it appeared in a statute prohibiting the sale of unregistered securities, elaborated upon the intent requirements for differing kinds of offenses. A distinction was made between those offenses that are *malum in se*, those which "reasoning members of society regard as condemnable," 613 P.2d at 826, and those that are *malum prohibitum*, where "there is no broad societal concurrence that [the prescribed conduct] is inherently bad." *Id.* at 826. The court found that for *malum prohibitum* offenses, (such as driving while license suspended), criminal intent should be regarded as a separate element of the offense, unless the offense fell within the exception for "public welfare offenses." These offenses were defined in *Hentzner* as:

'[C]aused primarily by the industrial revolution, out of which grew the necessity of imposing more stringent duties on those connected with particular industries, trades, properties, or activities that affect public health, safety, or welfare.'

613 P.2d at 826 (citations omitted). The penalties for these offenses are not usually harsh. *Id.* *See, Morissette v. United States*, 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288, 297 (1952); *Speidel v. State*, 460 P.2d 77, 78 (Alaska 1969); W. LaFave & A. Scott, *Criminal Law* § 31, at 218 (1972).

A state regulation that did not specifically require an element of intent was the subject of *State v. Rice*, 626 P.2d 104 (Alaska 1981). The challenged regulation, 5 AAC 81.140(b), stated that "no person may possess or transport any game or parts of game illegally taken." Rice had unsuccessfully requested that the jury be instructed that they "must be satisfied that the person either knew, or reasonably should have known, that the game or parts of game were illegally taken." The court considered whether the offense was properly classifiable as a public welfare offense, and found that:

It must be remembered that strict liability is an exception to the rule which requires criminal intent. Criminal statutes will be strictly construed to require some degree of *mens rea* absent a clear legislative intent to the contrary. Even when a statute, or a regulation, does not explicitly require any element of *mens rea*, we will scrutinize the statute or regulation to determine whether *mens rea* must be made part of the definition of the particular offense.

626 P.2d at 108 (footnote omitted). In finding that the challenged regulation did not create a public welfare offense, the court indicated that, because of its penalty provisions, the challenged regulation would likely be unconstitutional if read to exclude *mens rea* ; thus, the court relied on the rule of statutory construction that courts should, if possible, construe statutes so as to avoid unconstitutionality.

 We believe that an element of knowledge must similarly be read into AS 28.15.291. We believe that this conclusion, in turn, compels a finding that the notice provisions of AS 28.05.121 are valid, since a person who has not received actual notice under the statute will not be precluded from presenting a defense based upon reasonable failure to know of his license suspension.[4]

A similar fact situation was presented in *State v. Collova*, 76 Wis.2d 473, 255 N.W.2d 581 (1977). There the defendant was convicted of driving while license suspended pursuant to a statute that specifically stated that refusal to accept or failure to receive a notice of suspension was not a defense to that charge. The Wisconsin Supreme Court found that while non-receipt alone was not a defense, an element of *mens rea* must be implied. This finding was based on the existence of a mandatory ten-day jail term and the fact that the challenged statute prohibited conduct that would be entirely innocent in the absence of actual knowledge or reason to have knowledge of the revocation or suspension. The court stated:

> We believe the legislature intended to include as an element of the offense under sec. 343.44 [the challenged regulation] that the defendant has cause to believe that his driver's license might be revoked or suspended. A defendant has cause to believe his license might be revoked or suspended when:
>
> (1) He has knowledge of the revocation or suspension; or
>
> (2) He has received notification of the revocation or suspension, or
>
> (3) He has knowledge of, *or a reasonable person in the defendant's situation, exercising reasonable diligence, would have knowledge of*, the existence of facts or circumstances which, under Wisconsin law, might cause the revocation or suspension.

255 N.W.2d at 588 (footnotes omitted, emphasis added).

In the case at bar, the stipulated facts do not indicate that Jeffcoat would have been precluded from raising a defense based upon reasonable lack of knowledge that his license had been suspended. We note that Jeffcoat was in Fairbanks twice during the period in which the Department of Motor Vehicles attempted to deliver notice of the suspension of his driver's license. However, since Jeffcoat entered a plea of no contest, reserving only the question of constitutionality, we do not need to consider the reasonableness of notice in his case. It is suffi-

---

4. Obviously, the state need not affirmatively prove actual notice in each case. When evidence produced at trial indicates that the defendant had cause to believe that his license would be suspended, compliance by the state with AS 28.05.121 may give rise to an inference that the defendant's failure to receive actual notice was the result of intentional or unreasonable conduct on his part which was calculated to avoid receipt of notice of his license suspension. In such cases, the issue whether the defendant was reasonably unaware of his license suspension would be one to be decided at trial as a factual matter. *See, e.g., State v. Collova*, 76 Wis.2d 473, 255 N.W.2d 581, 588 & nn.9 & 10 (Wis.1977); *City of Albuquerque v. Juarez*, 93 N.M. 188, 598 P.2d 650, 653 (N.M. App.1979).

cient to conclude that, since Jeffcoat could have defended on the basis of reasonable lack of knowledge that his license had been suspended, the notice requirements of AS 28.05.121 cannot be construed to have violated his constitutional right to due process.[5]

Accordingly, the judgment of the superior court is AFFIRMED.

5. Since Jeffcoat's argument on appeal is limited to the contention that AS 28.05.121 is unconstitutional, in deciding this case we need not go beyond our holding that the offense of driving with a suspended license, in violation of AS 28.15.291(a), requires a showing of *mens rea*. We are not called upon to define the precise scope of the *mens rea* requirement under AS 28.15.291(a), nor is it necessary for us to determine whether the issue of *mens rea* would, upon a showing by the state of compliance with the notice provisions of AS 28.05.121, become an affirmative defense, imposing upon the defendant the burden of persuasion or of producing some evidence indicating lack of criminal intent.