STATE of Indiana, Appellant
(Plaintiff Below),

v.

Raymond P. KEIHN, Appellee
(Defendant Below).

No. 18S02–8908–CR–616.

Supreme Court of Indiana.

Aug. 10, 1989.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellant.

Alan K. Wilson, Muncie, for appellee.

DICKSON, Justice.

Following a bench trial acquittal of the defendant on the charge of driving while license suspended, the State sought appellate review on a reserved question of law pursuant to Ind.Code § 35–38–4–2(4). As presented in the State's brief, the issue is whether Ind.Code § 9–1–4–52 (driving while suspended) requires the State to prove that a defendant had actual knowledge that his license was suspended.

A majority of the Court of Appeals for the First District reasoned that the statute defining the offense does not set out knowledge or notice of suspension as an element, and the offense, being malum pro-

hibitum, does not require a culpable mental state or mens rea. *State v. Keihn* (1988), Ind.App., 530 N.E.2d 747.

The defendant now asks this Court to address the conflict between *Keihn* and *Burdine v. State* (1987), Ind.App., 510 N.E.2d 1385, which requires the State in a prosecution for driving after having been adjudged a habitual traffic offender to prove that "the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be a habitual traffic offender" where the defendant contends that he did not know of his status. *Id.* at 1389. We grant transfer to resolve the conflict and to address guidelines for construing criminal statutes that do not designate a culpable mental state element.

The crime of driving while license suspended appears in the motor vehicle title of the Indiana Code. Ind.Code § 9–1–4–52(a) provides:

> A person may not operate a motor vehicle upon the public highways while his driving privilege, license, or permit is suspended or revoked. A person who violates this subsection commits a Class A misdemeanor.

In three earlier cases on driving while license suspended, the Court of Appeals discussed the role of notice and the defendant's knowledge of the suspension of his license. *Grogan v. State* (1985), Ind.App., 482 N.E.2d 300; *Sewell v. State* (1983), Ind.App., 452 N.E.2d 1018; *Roberts v. State* (1979), 182 Ind.App. 430, 395 N.E.2d 802. Construing an earlier version of the statute, the *Roberts* court held that the defendant could not complain about the non-receipt of notice where his failure to provide a correct address on his license

"disabled" the Bureau of Motor Vehicles from sending proper notice. 182 Ind.App. at 431, 395 N.E.2d at 803 (noting that under Ind.Code § 9–1–4–36 drivers must notify the BMV of address changes or corrections; violation is a class C infraction, Ind. Code § 9–1–4–53(c)). The court also stated that proof of the defendant's intent was unnecessary. *Id.* Although reading no culpable mental state element into the offense, the court's discussion of notice implied that non-receipt of notice not due to the defendant's fault may constitute a defense to driving while license suspended.

The *Sewell* court reasoned that the offense of driving while license suspended was malum prohibitum, making the defendant's mental state irrelevant. 452 N.E.2d at 1020. A malum prohibitum offense is an act or omission that is made criminal by statute but that is not criminal or wrong in itself. Black's Law Dictionary 861–62 (5th ed. 1979). The court viewed the discussion of notice in *Roberts* as dicta. 452 N.E.2d at 1020. Similarly, the Court of Appeals in *Grogan* concluded that "[n]either criminal intent to violate the law nor knowledge by the defendant of the suspension of his license is an element of the crime." 482 N.E.2d at 303. The majority in *Keihn* followed the approach of *Sewell* and *Grogan* in rejecting notice· or the defendant's knowledge of the suspension of his license as an element of driving while license suspended under section 52.[1]

The defendant urges this Court to apply the rationale of *Burdine* and require the State to prove notice and the defendant's knowledge of his license suspension to sustain a conviction under § 9–1–4–52. In *Burdine*, the Court of Appeals reversed a conviction for driving after having been

---

**1.** The various state courts differ greatly in their interpretations of driving while license suspended statutes. Several courts hold that their statutes impose criminal liability without regard to knowledge or intent. *See People v. Morrison* (1986), 149 Ill.App.3d 282, 102 Ill.Dec. 549, 500 N.E.2d 442, *appeal denied,* (1987), 113 Ill.2d 581, 106 Ill.Dec. 53, 505 N.E.2d 359, *cert. denied,* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675; *State v. Pickering* (1983), La.App., 432 So.2d 1067, *writ denied,* La., 438 So.2d 574; *State v. Antonsen* (1987), Me., 525 A.2d 1048; *State v. Coady* (1987), Minn.App., 412 N.W.2d 39; *State v. Grotzky* (1986), 222 Neb. 39, 382 N.W.2d 20. Others require constructive notice or objective knowledge. *See State v. Jennings* (1986), 150 Ariz. 90, 722 P.2d 258; *State v. Jones* (1982), 231

Kan. 366, 644 P.2d 464 (notice is conclusive proof); *Zamarripa v. First Judicial District Court* (1987), 103 Nev. 638, 747 P.2d 1386 (non-receipt not due to driver's fault is defense); *State v. Atwood* (1976), 290 N.C. 266, 225 S.E.2d 543; *State v. Morrison* (1982), 2 Ohio App.3d 364, 442 N.E.2d 114; *State v. Buttrey* (1982), 293 Or. 575, 651 P.2d 1075 (non-receipt not due to driver's fault is defense); *State v. Collova* (1977), 79 Wis.2d 473, 255 N.W.2d 581. Some courts require actual notice or knowledge. *See Jeffcoat v. State* (1982), Alaska App., 639 P.2d 308; *People v. Lesh* (1983), Colo., 668 P.2d 1362; *Commonwealth v. Gray* (1986), 356 Pa.Super. 299, 514 A.2d 621, *appeal denied,* (1987), 514 Pa. 638, 523 A.2d 345.

adjudged a habitual traffic offender, Ind. Code § 9–12–3–1, because of insufficient evidence. 510 N.E.2d 1385. Like § 9–1–4–52, Ind.Code § 9–12–3–1 does not expressly provide a culpable mental state as an element of the offense. The *Burdine* court began by noting that the "absence of language indicating the level of culpability is not conclusive upon the question of whether guilty knowledge is an essential element of the crime." *Id.* at 1388. The court also noted that, under the initial habitual traffic offender statutes, Ind.Code Ann. §§ 9–4–13–1 to –18 (Burns 1973), the process of determining the status incorporated the defendant's knowledge of his being adjudged a habitual traffic offender. *Id.* In 1983, the legislature amended the statutes and shifted the determination of the status from the courts to the Bureau of Motor Vehicles. Ind.Code Ann. · § 9–4–13–4 (Burns Repl.1983). The statutes were amended again and recodified. Ind.Code Ann. §§ 9–12–1–1 to –3–3 (Burns Supp. 1984). The *Burdine* court concluded that the amendments did not expressly contradict the original incorporation of the defendant's knowledge into the adjudication process. 510 N.E.2d at 1389. In resolving the ambiguity of whether the amended statute dispensed with the knowledge aspect, the court cited the rules that a culpable mental state or mens rea is generally required in criminal offenses and that ambiguous criminal statutes must be resolved in favor of the defendant. *Id.* In view of the defendant's contention that he did not know that he had been adjudged a habitual traffic offender and the State's failure to present any evidence that notice of the adjudication had been mailed to the defendant, the *Burdine* court required a showing that "the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be a habitual traffic offender." *Id.* The same conclusion was reached in *Stanek v. State* (1988), Ind.App., 519 N.E.2d 1263, and *Hunter v. State* (1987), Ind.App., 516 N.E.2d 73.

The State contends that driving while license suspended is a strict liability offense and thus does not require proof of a culpable mental state. Keihn presents a constitutional argument that "knowledge of the suspension be an element that the state must prove before obtaining a conviction for driving while suspended."

■ The broad question before us is that of interpreting and applying a statute that defines a criminal offense without specifying any culpable mental state as an element. Our goal in construing criminal statutes is generally to determine and effect the legislative intent. '*Walton v. State* (1980), 272 Ind. 398, 398 N.E.2d 667. However, this Court strictly construes penal statutes against the state to avoid enlarging them by intendment or implication beyond the fair meaning of the language used. *State v. McGraw* (1985), Ind., 480 N.E.2d 552; *Pennington v. State* (1981), Ind., 426 N.E.2d 408.

■ Prior to the revision of our criminal code in 1976, the omission of such words as "knowingly" and "intentionally" from a statute defining a crime had been held to be not conclusive on whether guilty knowledge is an essential element of such crime. *Gregory v. State* (1973), 259 Ind. 652, 655, 291 N.E.2d 67, 68. In considering whether "intent to deprive" was an element of robbery although the statute did not mention it as such, the *Gregory* court stated:

> That which is merely malum prohibitum, i.e. an offense only because prohibited by statute, does not require intent and knowledge, unless specified by the prohibiting statute. However, that which is malum in se, i.e. inherently and naturally evil as adjudged by the senses of a civilized society, is wrong and criminal by reason of such knowledge or intent....

*Id.* The Court concluded that the robbery statute required "criminal intent and knowledge" because it adopted the traditional crime of robbery, which required guilty intent or knowledge. *Id.* at 655, 291 N.E.2d at 69.

In revising the criminal code, our legislature adopted in part the Model Penal Code's hierarchy of culpable mental states. Ind.Code § 35–41–2–2 ("intentionally," "knowingly," and "recklessly"). *See* Model Penal Code § 2.02 (1962).[2] By redefining

---

2. In addition to the requirement of culpability, the Indiana Criminal Code separately requires voluntary conduct. Ind.Code 35–41–2–1(a) specifies:

each offense with specific reference to a requisite mental state, the present criminal code generally obviates the need for determining legislative intent as to whether a culpable mental state is required.

Notable exceptions, however, remain. For example, the child molesting statute, Ind.Code § 35–42–4–3(a), does not expressly prescribe culpability. In *Newton v. State* (1983), Ind.App., 456 N.E.2d 736, and *Mullins v. State* (1985), Ind.App., 486 N.E.2d 623, the Court of Appeals found an implied element of mens rea to be required by viewing the statute as adoptive of the common law offense of sodomy. In *Snider v. State* (1984), Ind., 468 N.E.2d 1037, the lack of a mens rea element in the instructions was held not to constitute fundamental error. Criminal offenses defined in statutes apart from the revised criminal code have likewise presented this dilemma. Indiana courts have been confronted with construing criminal traffic statutes that do not designate a requisite culpability. *See Micinski v. State* (1986), Ind., 487 N.E.2d 150 (Ind.Code § 9–4–1–40, proof of knowledge of accident required for conviction of leaving scene of accident involving personal injury); *Smith v. State* (1986), Ind.App., 496 N.E.2d 778 (Ind.Code §§ 9–11–2–2, –5, proof of mens rea not required for conviction of driving while intoxicated causing death).

Criminal intent has generally been viewed as a presumptive element in criminal offenses. In *United States v. United States Gypsum Co.* (1978), 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854, the United States Supreme Court observed that " '[t]he existence of mens rea is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence,' " and that "intent generally remains an indispensable element of a criminal offense." 438 U.S. at 436–37, 98 S.Ct. at 2873, 57 L.Ed.2d at 869 (quoting in part *Dennis v. United States* (1951), 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137, 1147). While noting that "strict liability offenses are not unknown to the criminal

law and do not invariably offend constitutional requirements," the Court cautioned that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." 438 U.S. at 437–38, 98 S.Ct. at 2874, 57 L.Ed.2d at 870. This view was recently reaffirmed in *Liparota v. United States* (1985), 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434.

However, *Powell v. Texas* (1968), 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254, 1269, noted that a general constitutional doctrine of mens rea had not been recognized and observed:

> We cannot cast aside the centuries-long evolution of the collection of the interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his anti-social deeds. The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

The problem of whether culpability should be implied as a required element in otherwise silent criminal statutes was addressed by the Model Penal Code. Section 2.02(3) provides:

> When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts purposely, knowingly, or recklessly with respect thereto.

Model Penal Code § 2.02(3) (1962). Section 2.05 of the Model Penal Code further provides that as to offenses which are not subject to a sanction more severe than a fine, the element of culpability is not re-

A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense. However, a per-

son who omits to perform an act commits an offense only if he has a statutory, common law, or contractual duty to perform the act.

quired unless expressly specified, and strict criminal liability may be imposed. Model Penal Code § 2.05 (1962).

Similarly, the Indiana Criminal Law Study Commission in 1974 proposed the following sections:

(b) Minimum requirement of culpability for crimes:

If a statute defining a crime does not specify any culpability, and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is "wilfully." A person engages in conduct "wilfully," if he engages in the conduct either intentionally, or knowingly, or recklessly.

. . . .

(g) No requirement of culpability for infractions: Except as otherwise expressly provided or unless the context otherwise requires, if a statute provides that conduct is an infraction without including a requirement of culpability, a person commits the infraction if he engages in the conduct either culpably or not culpably.

Ind.Code Ann. § 35–41–2–2 commentary (West 1978). However, when the present criminal code revision was adopted in 1976, the legislature did not include any counterpart of either of these provisions.

Use of the malum in se/malum prohibitum distinction as an interpretive device has been criticized by various commentators as imprecise, unreliable, and unsound in principle. *See* J. Bentham, *Comment on the Commentaries* 80 (Everett ed.1928); Clark & Marshall, *Treatise on the Law of Crimes* 13 (Kearney 5th ed.1952); J. Hall, *General Principles of Criminal Law* 337–42 (2d ed.1960); *Kenny's Outlines of Criminal Law* § 17 (Turner ed.1952); 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 1.6, at 48 n. 57 (1986); Mueller, *Mens Rea and the Law Without It*, 58 W.Va.L.Rev. 34, 58–59 (1955–56); Note, *Constitutionality of Criminal Statutes Containing No Requirement of Mens Rea*, 24 Ind.L.J. 89, 97 (1948); Note, *The Distinction Between Mala Prohibita and Mala in Se in Criminal Law*, 30 Colum.L. Rev. 74, 86 (1936).

■ Professors LaFave and Scott have identified seven factors "considered of importance in deciding whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault, though it failed to spell it out clearly":

1) the legislative history, title or context of a criminal statute;

2) similar or related statutes;

3) the severity of punishment (greater penalties favor culpable mental state requirement);

4) the danger to the public of prohibited conduct (greater danger disfavors need for culpable mental state requirement);

5) the defendant's opportunity to ascertain the operative facts and avoid the prohibited conduct;

6) the prosecutor's difficulty in proving the defendant's mental state; and

7) the number of expected prosecutions (greater numbers suggest that crime does not require culpable mental state).

1 W. LaFave & A. Scott, *supra*, § 3.8, at 342–344. We agree that consideration of these factors in construing a criminal statute is useful in assessing legislative intent more accurately than reliance on the malum in se/malum prohibitum distinction.

■ As correctly reasoned in *Burdine*, the rule requiring ambiguous criminal statutes to be resolved in favor of the defendant militates in favor of the presumption that a culpable mental state is an intended element in criminal offenses for which the culpability is not specified by statute. This presumption may be overcome if consideration of factors such as those enumerated above decisively indicates that no such mental state was intended.

The legislative history of Ind.Code § 9–1–4–52, driving while license suspended, does not suggest whether the legislature intended a culpable mental state to be an element of the offense. Originally enacted in 1945, the statute was substantially amended in 1978. Ind.Code Ann. § 9–1–4–52 (Burns Repl.1980).[3] The prior

**3.** The original enactment, Ind.Code Ann.

§ 47–2907 (Burns Repl.1952), provided:

enactments are not conclusive upon whether culpability was intended as a required element.

The prescribed punishment under Ind. Code § 9-1-4-52 is relatively severe. Driving while license suspended is a class A misdemeanor, which provides for a maximum penalty of a year in prison and a $5000 fine. The offense was retained as a misdemeanor after many traffic offenses were "decriminalized" in 1982. Johnson, *Criminal Law & Procedure*, 16 Ind.L.Rev. 119, 123 n. 36 (1983). We also note that such harsh penalties may befall a driver whose license is suspended for reasons unrelated to his ability to drive safely. *See* Ind.Code §§ 9-2-1-5(b)(2) (false application), 9-4-1-53.5 (failure to prove financial responsibility). These considerations make it unlikely that the legislature intended to impose such criminal liability absent knowledge of suspension.

A review of the penalties for other traffic offenses within the same chapter further suggests that knowledge of suspension was not intentionally omitted. Violation of any of the offenses listed in Ind. Code § 9-1-4-47 is a class C misdemeanor, which provides for a maximum imprisonment of sixty days and a $500 fine. Ind. Code §§ 9-1-4-53(a), 35-50-3-4. Each of these offenses either expressly includes the defendant's knowledge as an element or necessarily entails that he knew of facts making his conduct wrongful. Ind.Code § 9-1-4-47 (display or possession of license known to be fictitious; loan or knowing permitted use of license to one not entitled thereto; false display or representation of license as one's own; failure or refusal to surrender upon demand suspended license; false name, address or statement, or knowing concealment of material fact on application; and knowing sale, offer to sell, purchase, or offer to purchase unauthorized or invalid license or registration).[4] The pro-

viding of lesser penalties for knowing wrongful conduct thus implies legislative intent that the greater offense of driving while license suspended requires proof that the offender knew of his suspension.

Additionally, the inability to avoid the prohibited conduct absent knowledge of the suspension strongly supports the requirement that knowledge of suspension must be shown.

■ We do not find the prosecution's difficulty in showing the defendant's knowledge of his license suspension to be a strong enough consideration to obviate knowledge as a required element of proof. When the Bureau of Motor Vehicles mails notice of license suspension to the defendant's last known address, proof of such notice would allow the trial court to infer a defendant's knowledge.

We conclude, therefore, that in a prosecution under Ind.Code § 9-1-4-52 the State must prove the defendant's knowledge of the suspension of his license. To the extent that they are inconsistent with this opinion, *Roberts*, *Sewell*, and *Grogan* are overruled.

■ In the present case, the evidence at trial disclosed that the defendant's arrest followed a police investigation of a traffic accident involving the defendant as a driver. At the scene the defendant was unable to produce his driver's license and told the investigating officer that his license was suspended. Record at 53, 67. However, the trial court found the evidence insufficient for a conviction because of the absence of proof that a notice of suspension was sent in due course by the Bureau of Motor Vehicles or that the defendant was given notice of his suspension in open court. We observe that application of the principles recognized by our opinion today would not have required an acquittal upon

Any person whose license or permit issued under the provisions of this act has been suspended or revoked as provided by law, and who shall drive any motor vehicle upon the public highways while such license or permit is suspended or revoked, shall be guilty of a misdemeanor.
Subsection (a) of the amended statute provided:

A person shall not operate a motor vehicle upon the public highways while his license or permit is suspended, impounded, or revoked. Ind.Code Ann. § 9-1-4-52 (Burns Repl.1980).

4. All other violations of the chapter are Class C infractions.

such evidence. However, the double jeopardy provisions of the Fifth Amendment prevent the State from retrying the defendant. *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023.

SHEPARD, C.J., DeBRULER and PIVARNIK, JJ., concur.

GIVAN, J., concurs in result with separate opinion.

### ON CRIMINAL PETITION TO TRANSFER

GIVAN, Justice, concurring in result.

I concur with the result in this opinion. The Court of Appeals' opinion is somewhat confusing concerning *mens rea* but the result of the case nonetheless is correct because the evidence showed that Keihn actually had knowledge that his license had been suspended. Therefore a great deal of the discussion about *mens rea* or the lack thereof is dictum and in my opinion inaccurate. I have the same difficulty with the majority opinion herein.

I hold firmly to the position that *mens rea* is a necessary element in absolutely every criminal case. *See, e.g.*, 21 Am. Jur.2d *Criminal Law* § 129 *et. seq.*, (1981). Even there, some of the cited cases show a continuing confusion concerning *mens rea*. What is often described as a lack of need for *mens rea* merely demonstrates a misunderstanding of what constitutes *mens rea*.

For instance, when a person deliberately drives his automobile with reckless disregard for the safety of others, resulting in an accident fatal to another person, he can be found guilty of manslaughter or reckless homicide. It is true he had no intent or *mens rea* to kill another human being. Instead, his successful prosecution depends upon the finding of the intent to drive with reckless disregard for the safety of others.

I know of no case which correctly sets forth the proposition that any crime can be prosecuted despite a total absence of *mens rea*. In some cases we find the statement that no *mens rea* is required, but when one examines the facts of the case it becomes apparent that the *mens rea* is inferred from the commission of a certain act. An example often repeated by this Court is the inference of the intent to kill from the use of a deadly weapon in a manner calculated to cause severe injury or death. These same principles apply to the case at bar.

I am in total agreement with the statement in the majority opinion that there must be at least an inference that a person has received notice that his license has been suspended. The trouble with the majority opinion is the total confusion that it engenders in arriving at that decision. I merely would make the statement that *mens rea*, whether it be specific or inferred, is absolutely required in every criminal case and that the State provided such proof in the prosecution of Keihn.