Alvin W. WAGERMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9201–CR–42 [1].

Court of Appeals of Indiana, First District.

Aug. 5, 1992.

Transfer Denied Sept. 15, 1992.

---

**1.** This case diverted by direction of the Chief Judge on 6–29–92.

**14**

Robert W. Hammerle, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

In a prosecution under IND.CODE 35–47–2–18 for possession of a handgun with an altered serial number, must the State prove the defendant had knowledge of the serial number's alteration? We hold that it must and therefore reverse.

### FACTS

The facts are not disputed. On February 24, 1991, defendant-appellant Alvin Wagerman was a probationary member of the Outlaws motorcycle club. Wagerman, who was carrying his valid handgun license and his pistol, went to the Indianapolis Convention Center to attend a gun show with five of the more senior members of the club's local chapter. They drove together in a van and parked across the street from the Convention Center. As they walked into the show, a brawl between other members of the Outlaws and a rival club, the Sons of Silence, was in progress. Wagerman and his companions, now accompanied by seven others, ran out of the Convention Center and back to the van parked across the street.

As the van began to pull away, plain clothes officers drew their weapons and ordered the van to stop. The driver complied, and all the occupants, on police orders, left the van one at a time. During the pandemonium, two handguns were thrust upon Wagerman, one literally into his trousers, and the other into his hands. He put the second weapon in his trousers, and he had them both on his person several seconds later when he got out of the van and lay spread-eagle in the street to be searched. The arresting officer discovered all three weapons, and the two which had been given to Wagerman were found to have altered serial numbers.

During trial to the bench, the State made no attempt to show Wagerman knew the handguns had altered serial numbers. Instead, the record reveals the State's main concerns were that Wagerman's receipt of the weapons had allowed two other people to "avoid being arrested for carrying a

weapon without a permit," *record* at 117, and that Wagerman should have assumed the weapons were thrust upon him by people without a license because he had a valid license. *Record* at 118.

The judge acquitted Wagerman on one Class C felony charge for possession of a handgun with an altered serial number and convicted him on the other, rejecting Wagerman's argument that the State was required to show knowledge of the altered serial numbers. In pronouncing sentence, the judge reasoned Wagerman "surely [did not] carry [the two illegal weapons] around for personal protection." *Record* at 145. The judge therefore stated he believed the "only reason" Wagerman was found in possession of the two illegal weapons was that Wagerman's companions thought they could escape liability by giving Wagerman their illegal weapons. *Record* at 145.

## DISCUSSION AND DECISION

■ Possession of a handgun with an altered serial number is prohibited by IND. CODE 35-47-2-18, which provides:

No person shall:

(1) change, alter, remove, or obliterate the name of the maker, model, manufacturer's serial number, or other mark of identification on any handgun; or

(2) possess any handgun on which the name of the maker, model, manufacturer' serial number, or other mark of identification has been changed, altered, removed, or obliterated;

except as provided by applicable United States statute.

At trial and on appeal, Wagerman claims the State was required to show he knew the serial numbers had been altered. The State responds the statute does not require a showing of *mens rea* for a conviction.

■ When construing a criminal statute which does not expressly contain a *mens rea* requirement, we must bear in mind that "[c]riminal intent has generally been viewed as a presumptive element in criminal offenses." *State v. Keihn* (1989), Ind., 542 N.E.2d 963, 966. Moreover, penal statutes are to be strictly construed "against the state to avoid enlarging them by intendment or implication beyond the fair meaning of the language used." *Id.* at 965.

■ In *Keihn*, our supreme court abandoned the old *malum in se-malum prohibitum* distinction as dispositive of whether a showing of criminal intent is required under a statute without an express requirement. Instead, Indiana courts must now review the following factors to determine whether criminal intent is an essential element of a given crime:

1) the legislative history, title or context of a criminal statute;

2) similar or related statutes;

3) the severity of punishment (greater penalties favor culpable mental state requirement);

4) the danger to the public of prohibited conduct (greater danger disfavors need for culpable mental state requirement);

5) the defendant's opportunity to ascertain the operative facts and avoid the prohibited conduct;

6) the prosecutor's difficulty in proving the defendant's mental state; and

7) the number of expected prosecutions (greater numbers suggest that crime does not require culpable mental state).

*Id.* at 967 (quoting W. LaFave & A. Scott, *Substantive Criminal Law* § 3.8, p. 342–44 (1986)). In applying these factors, we must adhere to the presumption that criminal intent is necessary, and only if consideration of the factors decisively indicates no intent is required are we to find the legislature did not intend criminal intent to be an essential element of the crime. *Id.* at 967.[2]

■ Here, an analysis of several of the factors does not decisively indicate the legislature intended to exclude criminal intent as a required element of the crime of pos-

---

**2.** The *Keihn* court left open the possibility that other factors for consideration exist when it stated "factors *such as those enumerated above* decisively indicate[ ] that no ... mental state was intended." *Id.* Until additional factors are announced, however, we will rely on the seven listed above.

session of a handgun with an altered serial number.[3]

IND.CODE 35-47-2-18 was originally promulgated in 1935 (Acts 1935, ch. 63, § 12), and codified as IND.CODE ANN. § 10-4745 (Burns 1942 replacement). At that time, the statute proscribed only the alteration of the serial number. Possession of a handgun with an altered serial number was not a crime, but was instead *prima facie* evidence that the possessor of the weapon was the person who altered the serial number. When the Indiana Code was reordered in 1972, the statute was recodified without change as IND.CODE 35-23-5-12. In 1973, the *prima facie* evidence provision was deleted, P.L. 333-1973, § 1, and the statute was recodified as IND. CODE 35-23-4.1-12. Finally, in 1983, the statute was amended and recodified in its present form. Nothing in this history decisively shows the legislature intended to make serial number alteration a strict liability crime.

Additionally, the sanction for violating IND.CODE 35-47-2-18 is severe, with a maximum prison sentence of eight years and a maximum fine of $10,000. The severity of the penalty is strongly indicative of the legislature's intent not to dispense with knowledge of alteration as an essential element of the crime.

Moreover, the defendant's opportunity to apprise himself of the facts and avoid the prohibited conduct will vary widely from case to case. Here, for example, Wagerman had absolutely no opportunity. As the undisputed testimony shows, the weapons were thrust upon Wagerman, who then stepped out of the van, lay down in the street, and was searched.

Finally, the State's burden in proving knowledge of the alteration appears to us no greater in cases under IND.CODE 35-47-2-18 than in other cases in which the prosecutor must use surrounding circumstances, for example, the length of time of possession, and inferences to show criminal intent. *See, e.g., Hoffman v. State* (1988), Ind., 520 N.E.2d 436 (evidence sufficient to show defendant knowingly possessed unlicensed handgun while a passenger in vehicle).

Consideration of the *Keihn* factors does not decisively indicate the legislature intended to dispense with a defendant's knowledge of alteration as an essential element of the crime created by IND.CODE 35-47-2-18. The State was therefore required to show Wagerman knew the serial numbers of the handguns given to him had been altered.

■ The State points to testimony by the expert that the alteration could be detected by an expert, or even perhaps by a non-expert with the naked eye, but that is not enough. The undisputed evidence reveals Wagerman had the weapons in his possession for mere instants before he had to lie down in the street to be searched. Even if Wagerman were proficient enough with handguns to notice the alteration, there was no evidence he either noticed, or had a chance to notice, the alteration. As we stated in the recitation of the facts, the State made no attempt at trial to show Wagerman knew of the altered serial numbers. Indeed, in closing argument the prosecutor asserted Wagerman should be liable in spite of his *failure* to check the serial numbers. *Record* at 122. Moreover, as the trial judge stated:

> the problem as I see it is that as Mr. Wagerman—as the facts in this case came out, he was associated with them [the Outlaws] ... was properly carrying his own licensed properly serial numbered weapon; and, when the police arrived, as they were undoubtedly going to do, based upon the altercation [in the Convention Center] that allegedly took place, he ends up with two (2) or three (3) more from other members of this club, who happen to have obliterated serial numbered weapons.... So it's the asso-

---

**3.** Although we refer only to the alteration of serial numbers, all we have said applies with full force to the other prohibitions of IND.CODE 35-47-2-18, i.e., possessing a handgun with changed, removed, or obliterated maker's name, model, serial number, or other identifying mark.

ciation that tends to produce illegality, especially in this case.

*Record* at 139–40.

The trial judge believed Wagerman did not know of the altered serial numbers, and it is not our province to reweigh the evidence to reach a contrary conclusion. The evidence of Wagerman's knowledge of the altered serial number is insufficient.

### CONCLUSION

The judgment of the trial court is reversed, and Wagerman's conviction is vacated.

SHARPNACK, J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent to the majority opinion for the reason advanced by the State. The statute Wagerman was convicted of, IND.CODE 35–47–2–18(2), does not specify criminal intent as an essential element of the crime. Accordingly, no proof was required. I would affirm.