**Aaron WALKER, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 49S00–9404–CR–337.

Supreme Court of Indiana.

June 25, 1996.

Rehearing Denied Oct. 7, 1996.

Kay A. Beehler, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Aaron Walker contends that to sustain a conviction for dealing in cocaine within 1,000 feet of a school, as a class A felony, Ind.Code Ann. § 35–48–4–1 (West Supp.1995), the State must prove that the defendant had actual knowledge that the sale was occurring within 1,000 feet of a school. We hold that the Code creates a strict liability enhancement and that such proof is unnecessary.

The State charged Walker with dealing in cocaine after he sold the drug to an undercover police officer, Ernie Witten. Armed with a $20 bill to make a purchase and a microphone taped to his chest, Witten drove to the parking lot of an Indianapolis apartment complex near Public School No. 114. He noticed a group of young men sitting under a shade tree. One of these motioned to Witten, a sign the officer interpreted as asking what the officer wanted. Witten held up one finger, intending to indicate that he wanted one rock of cocaine. The young man made another motion that Witten construed as an instruction to pull around. The officer did so.

Once Witten had parked his truck, Walker approached and asked what he was looking for. Witten replied he wanted "a twenty," which is street slang for $20 worth of crack cocaine. Walker reached into his pocket, took out a plastic bag containing "several rocky hard white substances" (R. 140) and handed one to Witten. Witten gave Walker the marked $20 bill and the transaction was over.

Walker was eventually arrested and charged. A jury found him guilty of dealing in cocaine as a class A felony and determined that he was an habitual offender. Ind.Code Ann. § 35–50–2–8 (West Supp.1995). The trial judge gave him the presumptive sentence for dealing, thirty years, and added thirty years for the habitual offender finding.

The statute under which Walker was convicted declares: "(a) A person who: (1)

Knowingly or intentionally ... (C) Delivers ... cocaine ... commits dealing in cocaine, a Class B felony." Ind.Code Ann. § 35–48–4–1 (West Supp.1995). The statute elevates the offense to a class A felony if the person "Delivered ... the drug in or on school property or within one thousand (1,000) feet of school property or on a school bus." *Id.*

██ Walker does not dispute the evidence offered at trial that the transaction occurred 542 feet from the school. The statute does not contain any express requirement that a defendant *know* that a transaction is occurring within 1,000 feet of a school, but Walker argues that permitting enhancement of the crime to a class A felony without such proof violates the due process requirement that a conviction rest on proof of each element of the crime. He relies principally on *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) for this proposition.

While Walker's argument is difficult to assess in its summary form, we perceive the question to be whether we should interpret the statute as requiring separate proof of scienter with respect to an element for which the legislature has not specifically required proof of knowledge. We have encountered this question in a variety of settings, including statutes we concluded were meant to establish strict liability for so-called "white collar" crimes. *Enservco, Inc. v. Indiana Securities Div.*, 623 N.E.2d 416 (Ind.1993) (declining to read scienter requirement into franchise fraud statute); *accord Hacienda Mexican Rest. of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.*, 641 N.E.2d 1036 (Ind.Ct.App.1994) (holding trial court erred in giving jury instruction requiring scienter in franchise fraud case).[1]

As we observed in *State v. Keihn*, 542 N.E.2d 963 (Ind.1989), Professors LaFave and Scott accurately describe this question as "whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault, though it failed to spell it out clearly." *Id.* at 967 (quoting 1 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 3.8 at 342–44 (1986)). We noted with approval the seven factors LaFave and Scott have suggested be balanced in deciding this question.[2] One of these factors, the severity of the punishment, suggests that the legislature might have intended to require proof of mental state for the enhancement of dealing in cocaine. Other factors, particularly the great danger of the prohibited conduct and the great number of expected prosecutions, suggest that the General Assembly likely did intend to create a strict liability enhancement.

Our assessment of these factors makes it difficult to conclude that the General Assembly intended to require separate proof the defendant knew that the dealing occurred near a school but failed to articulate its intent. Moreover, we can imagine an altogether rational reason the legislature might decide to write a statute with a strict liability punishment provision. As Judge Staton wrote for the Court of Appeals, "A dealer's lack of knowledge of his proximity to the schools does not make the illegal drug any less harmful to the youth in whose hands it

**1.** Conversely, Indiana courts have required proof of mental culpability in a number of less than "white collar" crimes where statutes did expressly provide that element. *See, e.g., Snider v. State,* 468 N.E.2d 1037 (Ind.1984) (presuming child molesting statute required proof of scienter); *Wagerman v. State,* 597 N.E.2d 13 (Ind.Ct.App. 1992) (holding conviction for possession of handgun with altered serial number required proof of knowledge of alteration); *Van Sant v. State,* 523 N.E.2d 229 (Ind.Ct.App.1988) (holding obscenity statute required proof of scienter) (collecting cases); *Mullins v. State,* 486 N.E.2d 623 (Ind.Ct. App.1985) (holding child molesting statute required proof of scienter).

**2.** These factors are:

1) the legislative history, title or context of a criminal statute;
2) similar or related statutes;
3) the severity of punishment (greater penalties favor culpable mental state requirement);
4) the danger to the public of prohibited conduct (greater danger disfavors need for culpable mental state requirement);
5) the defendant's opportunity to ascertain the operative facts and avoid the prohibited conduct;
6) the prosecutor's difficulty in proving the defendant's mental state; and
7) the number of expected prosecutions (greater numbers suggest that crime does not require culpable mental state).

*Keihn,* 542 N.E.2d at 967.

may eventually come to rest." *Williford v. State,* 571 N.E.2d 310, 313 (Ind.Ct.App.1991).

Accordingly, we hold that the conviction was not deficient for failure to prove that Walker knew he was within 1,000 feet of a school when he committed the crime.

■ Walker also argues that the evidence of dealing was insufficient because he did not have the $20 bill given to him by Witten in his possession at the time of his arrest. In light of officer Witten's testimony about exchanging the $20 bill with Walker in return for cocaine, the absence of the currency as an exhibit was simply a matter for the jury to weigh as finders of fact, rather than a matter for us to assess as an appellate court. *See Tiller v. State,* 541 N.E.2d 885 (Ind.1989).

Accordingly, we affirm the judgment of the trial court.

DICKSON and SELBY, JJ., concur.

DeBRULER and SULLIVAN, JJ., dissent with separate opinions.

DeBRULER, Justice, dissenting.

The issue in this case is not whether the Dealing in Cocaine statute contains an intent requirement. It plainly does. Rather, the issue is whether the "knowingly or intentionally" language already present in the statute requires that the State prove that appellant knew his proximity to the school when he was dealing the cocaine. Thus, the question facing this Court is the scope, not the existence, of scienter.[3]

The first guide in determining the scope of scienter is the language of the Dealing in Cocaine statute itself. As always, the statutory language is the primary guide in determining the Legislature's intent. *State ex rel Roberts v. Graham et al.,* 231 Ind. 680, 110 N.E.2d 855 (1953). The pertinent language of the Dealing in Cocaine statute reads as follows:

(a) A person who *knowingly or intentionally* ... delivers ... cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II ...: commits dealing in cocaine or a narcotic drug, a Class B felony, except as provided in subsection (b.)

Subsection (b) further provides that

[t]he offense is a Class A felony if the amount of the drug involved weighs three (3) grams or more; the person delivered; or financed the delivery of the drug to a person under eighteen (18) years of age at least three (3) years junior to the person; or the person delivered or financed the delivery of the drug in or on school property or within one thousand (1,000) feet of school property or on a school bus.

Ind.Code Ann. § 35–48–4–1 (West Supp. 1994) (emphasis added). Given this language, we are confronted with the question of which parts of the statute the "knowingly and intentionally" language is supposed to modify. The Legislature, however, has provided yet another guide. In addition to the Dealing in Cocaine statute's own language, the Legislature has included a rule of interpretation in for its penal laws:

Unless the statute defining the offense provides otherwise, if a kind of culpability is required for the commission of the offense, *it is required with respect to every material element of the prohibited conduct.*

Ind.Code Ann. § 35–41–2–2(d) (West 1986) (emphasis added). The majority concedes that the "within 1000 feet of a school" requirement is an element of the crime. It does not address, however, the application of § 35–41–2–2(d) to the interpretation of the Dealing in Cocaine statute at all. Although the Legislature does not define the term "material element" in the Code, proof of dealing cocaine "within 1000 feet of a school" changes what would be a Class B felony with a minimum sentence of six years to a Class A felony with a minimum sentence of 20 years.[4]

---

**3.** Additionally, the majority's characterization of the Dealing in Cocaine statute as a "strict liability" statute is wrong. Criminal strict liability refers only to those penal statutes containing no intent requirement at all. *See Kimball v. State,* 474 N.E.2d 982, 985 (Ind.1985). The Dealing in Cocaine statute does require a showing of crimi-

nal intent—the only issue is how much intent must be proved by the State to gain a Class A felony conviction.

**4.** The harshness of the penalty is even more stark when one considers that the sentencing statutes imposed a presumptive sentence of 30 years for a

This fact surely qualifies the "within 1000 feet of a school" requirement as a material element under § 35–41–2–2(d). Because the Legislature has not provided otherwise in the Dealing in Cocaine statute as § 35–41–2–2(d) explicitly requires, one can only conclude that the term "knowingly" requires the State to prove beyond a reasonable doubt that the defendant did in fact have knowledge of his proximity to the school.

Additionally, the rule of lenity requires that criminal statutes be strictly construed against the State. *Bond v. State,* 515 N.E.2d 856, 857 (Ind.1987). Here again, one is led to the conclusion that the express use of term "knowingly" in the dealing in cocaine statute requires that the State to show that the defendant knew his proximity to the school in order to be guilty of the Class A felony of dealing in cocaine.

The rulings of the federal courts and the acts of other states undermine the majority's position. The issue of the scope of scienter in a criminal statute has faced the United States Supreme Court as well. In *United States v. X–Citement Video, Inc. et al.,* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Court held that guilt under the Protection of Children Against Sexual Exploitation Act of 1977, 18 U.S.C. § 2252, required proof of an accused's knowledge of a performer's age, even though the most natural grammatical reading of the statute seemed to limit the application of that statute's knowledge requirement to only some of its other subsections. In explaining its interpretation, the Court held that the background presumption of evil intent is a fundamental principle of the criminal law and should therefore be used to resolve any questions concerning the scope of scienter:

> Our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them.

*X-Citement Video,* 513 U.S. at ——, 115 S.Ct. at 468 (1994). In the same opinion, the Court noted that the harsh penalties for violating 18 U.S.C. § 2252 required the statute be construed to have the broad scienter requirement. *Id.* at ——, 115 S.Ct. at 469. *See also Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

Both Congress and some states have successfully passed anti-drug laws intended to protect children from the drug trade by creating a drug free zone around schools. The Federal Schoolyard statute, 21 U.S.C.S. § 860 (Supp.1995), for instance, completely lacks an intent provision for its proximity element and thus burdens the drug dealer with ascertaining his proximity to the protected zone.[5] *See United States v. Holland,* 810 F.2d 1215 (D.C.Cir.1987), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987) (Federal Schoolyard statute satisfies Due Process even though proof of defendant's knowledge of his proximity to a school is not required) and *United States v. Falu,* 776 F.2d 46, 48–50 (1985) (Federal Schoolyard statute will not be read to require proof of knowledge of proximity to a school for a conviction under the statute). Congress created the drug free zones believing that the mere presence of drug dealing around children was a negative influence on them, even if no one tried to directly sell to the children themselves or recruit them as couriers. *Holland* at 1219. Other states have also modeled their statutes after the Federal Schoolyard Statute and have either drafted their statutes with no intent requirement at all or explicitly state that lack of knowledge is not a defense to the proximity element.[6]

---

Class A felony and 10 years for a Class B felony at the time of the alleged crime. See Ind.Code Ann. § 35–50–2–4 and § 35–50–2–5 (West 1986).

**5.** *See* 21 U.S.C.S. § 860 (Supp.1995). Only the separate but related offense under 21 U.S.C.S. § 841 (1984) contains an intent requirement. The separateness of the § 841 and § 860 offenses, however, makes the discerning of Congressional intent that much easier.

**6.** Also, several states have explicit provisions in their schoolyard statutes stating that a defendant's lack of knowledge of his proximity to a school is not a defense. See Utah Code Ann. § 58–37–8(5)(d) (1996) and N.J.Rev.Stat. § 2C:35–7 (1995), and Wash.Rev.Code § 69.50.435 (Supp.1996). Moreover, several schoolyard statutes contain no mens rea requirement at all. See Fla.Stat. ch. 893.13(1)(c) (1994)

The "knowingly or intentionally" phrase in Indiana's Dealing in Cocaine statute, as well as the lack of any language manifesting a contrary purpose, causes it to be more plausibly read to target the drug trade involving children near schools rather than to create a drug free zone around our state's schools, however. Its purpose is rather to target those who would sell to school age children and, worse still, recruit them as distributors of illicit drugs. The intent language actually used in the statute indicates a legislative intent to punish the schoolyard pusher more harshly than those who sell to adults in their apartments and homes that merely happen to be within a zone. The legislature could have reasonably believed that drug dealers who sell to adults are bad enough, but those who lurk in the playgrounds of our nation's school to prey upon school age children are worse still. By this reading of the statute, the greater harm created by this particular form of drug trafficking and the greater moral culpability of one involved in such trafficking led the Legislature to require proof of a greater level of knowledge for the Class A felony conviction than a Class B conviction under the Dealing in Cocaine statute. I therefore believe that this reading of the statute clearly requires the State to prove that evil intent by showing that appellant knew that he was dealing within 1000 feet of a school when he was dealing cocaine.

The majority relies on this Court's adoption of LaFave and Scott's seven factor test in *State v. Keihn* to justify its interpretation of the Dealing in Cocaine statute. See *State v. Keihn,* 542 N.E.2d 963 (Ind.1989). That case, however, dealt with the a statute that had *no* intent requirement. Given that the Dealing in Cocaine statute does contain an intent requirement, use of the *Keihn* test to interpret a statute in which the Legislature has included an intent requirement is dubious at best.

Moreover, the majority opinion gives no guidance for applying the *Keihn* test. Without a principle stating when the *Keihn* test will be applied or limiting its application to only those criminal statutes that completely lack an intent element, I fear that the logical conclusion of the majority's application of the *Keihn* test to other criminal statutes could lead to interpretations that would strip our criminal statutes of their intent requirements. In short, the majority's use of the *Keihn* test opens a Pandora's Box of possible reinterpretations of criminal statutes that may plainly contradict the Legislature's expressed intent, no matter how clearly articulated.

When asked to determine the sufficiency of the evidence produced at trial, this Court neither weighs the evidence nor resolves questions of credibility, but looks only to the evidence and the reasonable inferences therefrom which support the verdict. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984). Nevertheless, when the State fails to prove all the elements of a criminal statute, the conviction cannot stand. In the present case, the prosecution made no showing at trial that appellant knew his distance from the school. The only proof addressing the "within 1000 feet of a school" element of the statute was Detective Witten's testimony that he and his colleagues measured the distance from the site of the controlled buy to the front of Public School 114. Therefore, even the evidence most favorable to the verdict and the reasonable inferences therefrom fail to provide probative evidence from which a reasonable trier of fact could infer the requisite scienter beyond a reasonable doubt.

I would remand this cause to the trial court for appellant to sentenced for the Class B felony of Dealing in Cocaine.

SULLIVAN, Justice, dissenting.

While our legislature *could* write a statute making it a crime to deal drugs within one thousand feet of a school whether the dealer knew he was within one thousand feet of a school or not, I agree with Justice DeBruler that the legislature did not write Indiana Code § 35–48–4–1 that way. In particular, I think the majority is wrong not to take into

and Va.Code Ann. § 18.2–255.2 (1988). Either approach would clarify the ambiguity inherent in the phrasing of Indiana's Dealing in Cocaine

statute and its interplay with Ind.Code § 35–41–2–2(d).

account in its analysis Indiana Code § 35–41–2–2(d) which provides:

Unless the statute defining the offense provides otherwise, if a kind of culpability is required for the commission of the offense, it is required with respect to every material element of the prohibited conduct.

The statute at issue here requires "knowing or intentional" culpability for the commission of the offense and does not provide for any lesser degree of culpability with respect to the "one thousand feet of a school" element.

Finally, I agree with Justice DeBruler that Chief Justice Rehnquist's analysis of the *scienter* requirement in a federal criminal statute provides useful guidance here:

Our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable *scienter* requirements, even where the statute by its terms does not contain them.

*United States v. X-Citement Video, Inc.,* 513 U.S. 64, ——, 115 S.Ct. 464, 468, 130 L.Ed.2d 372 (1994) (emphasis added).

For these reasons, I dissent.